4ws265
146  392

4ws265
196  585

4 WS 265
20 SC 373
20 SC 410

## Singer *against* M'Cormick.

Faithful service is a condition precedent to the right of a servant to recover wages; misconduct inconsistent with the relation of master and servant will justify the master in putting an end to the contract of service at any time.

ERROR to the District Court of *Allegheny* county.

This was an action on the case for money had and received by Pollard M'Cormick and Alexander Brackenridge, trading in the name of M'Cormick & Co., against Samuel Singer.

On the trial it appeared that the defendant had been a clerk or book-keeper in the employment of the plaintiffs (who were manufacturers and venders of cotton goods) for several years, at a stipulated salary of $1000 per annum; that he was discharged abruptly, and without notice, about the middle of the year, and that at the time of his discharge he had received the sum of $300, or thereabouts, beyond the amount of his salary, computed up to the time of his discharge. The defendant contended that as he had been thrown out of employment in the midst of his term, without notice, and, as he alleged, without sufficient cause, he was entitled to recover the balance of his salary for the then current year, and ought to be permitted to set it off in this action.

Mr Brackenridge, one of the plaintiffs, was called as a witness by the defendant, and testified as follows:

" I was a member of the firm of M'Cormick & Co.; I was the Co., and continued to be a member thereof until after Singer's discharge. I employed Singer, by request of M'Cormick, at $1000 per year. I was totally indefinite as to the time. I never made any complaints as to Singer's accuracy as a clerk. I do not recollect of finding any default in Singer as relates to keeping the books, except in one instance, and that related to myself. As to the erasures, the case was this: I had never turned my attention to the entries until a circumstance that occurred shortly previous to our dissolution. I then had my attention called to them, for reasons which I considered satisfactory to my mind. I called Singer's attention to M'Cormick's account and my own; handed him an article of agreement between M'Cormick and myself, embracing a very material item in those accounts, stated to him that his blending the transactions of that agreement in posting amongst the private accounts, was calculated to do me injustice, and I requested him, as the book-keeper of the house, to look at the article and re-state the accounts if he thought it proper to do so. Singer informed me the next morning that he had

IV. — 34          x

[Singer v. M'Cormick.]

examined the article, that he was satisfied the posting was incorrect, and he had altered it accordingly. He had merely separated them in the posting, without making any difference in the general result. M'Cormick thought otherwise, and discharged Singer. Before Singer's discharge, a few days after the alteration, M'Cormick expostulated with me on the subject in the presence of Singer. He objected, censured—I insisted it was right. Singer stated in the presence of us both that no alteration had been made in the original entries; that they were there; would speak for themselves, and would test the correctness of the posting. There had been no previous altercation or difficulty about it, nor did I anticipate any when I directed the alteration to be made. I considered that everything arising under that article should be kept separate from our private accounts. I was not consulted about Singer's discharge, or advised of it, until after it had occurred. He was discharged suddenly."

The court below (Shaler, President,) was of opinion that the conduct of the defendant was inconsistent with his duty, and such as justified his discharge. Verdict and judgment were rendered for the plaintiffs.

*Wylie* and *Williams*, for plaintiff in error. The case is simply this: One partner discovers an error in the posting of their accounts, growing out of the contract of partnership; and he puts the contract into the hands of the book-keeper to enable him to make the correction in conformity to the agreement, and it is done; and, as we say, rightly done, and for this the other partner discharges him. Clearly, it is not good cause for dismissing a servant because he corrects an error by the order of one who has a right to command him.

*Findlay, contra.* If, in a matter of accounts affecting the interests of the individual partners, a book-keeper makes an erasure in the books of the firm under the direction of one partner without the knowledge of the other, it is an act of bad faith, which justifies his discharge. It is not sufficient that the leger alone was altered and that the day-book would show the original entries; it is not the amount of injury done, but the character of it, which shows that the clerk was not a person in whom confidence could be reposed.

The opinion of the Court was delivered by

Rogers, J.—Assuming that the effect of the agreement was to create a hiring for a year, has there been such misconduct on the part of the servant as will justify the master in dismissing him from his service before the termination of the contract? Faithful service is a condition precedent to the right of wages, and where there is any misconduct inconsistent with the relation of master

[Singer v. M'Cormick.]

and servant, the former has an undoubted right, at any time, to put an end to the contract. *Libhart* v. *Wood*, (1 *Watts & Serg.* 266). But if the dismissal be unjust, and without cause, the master cannot, by his wrongful discharge, prevent the servant from receiving compensation, not only for services rendered, but also the wages he would have earned had the contract continued in full force. The case was this: An erasure was made by the defendant, who was the book-keeper of the firm of M'Cormick & Brackenridge, at the request and by the order of the latter, in a private account between him and his partner. The erasure was made by an entire obliteration of the entries in the leger, without the consent or knowledge of M'Cormick, in a matter which the partner ordering the alteration supposed, whether erroneously or not, had a direct bearing on their contract. For this the defendant was discharged from his employment, and the question is, whether there was sufficient cause.

Whether one of two partners has authority to direct the correction of an error in the posting of the books of the partnership, it is unnecessary to decide. In an immaterial matter, it is possible he may, although that depends so much upon circumstances that it is difficult to subject it to the test of any precise or definite rule. It would, to say the least of it, be a dangerous experiment, and except in a strong case, ought to receive no countenance in a court of justice. And if injury should result to the firm, the party ordering it should bear the loss, as it is impossible to believe that one partner is the agent of the other for any such purpose; nor can an authority be implied to do an act which is manifestly wrong. The servant would be justifiable in refusing to make the alteration, particularly in the manner this has been done, even if ordered by one or all the parties, and if dismissed he would be entitled to full compensation on his contract. As between the firm and third persons, it is but just that the act of one, whether expressly authorized or not, should bind all; but an entirely different question is presented in a contest between the partners themselves, where loss accrues to the firm in consequence of an erasure, or improper obliteration of the books. But however this may be, it strikes me that this is a case without any great difficulty. The condition on which the right to wages depends, is fidelity not to one but to every member of the firm; and can this with truth be affirmed of a servant who undertakes to obey the directions of one which he knows are to the manifest prejudice of the other. And this is the predicament in which, for some unexplained reason, the defendant has placed himself. It cannot be denied but that M'Cormick had a just right to complain of the conduct of every person engaged in the transaction. It was understood that the entry, in some manner, had a bearing on the construction of the contract between the partners. Of this the defendant was not ignorant, for he was informed of it at the time

[Singer v. M'Cormick.]

by Brackenridge; and yet, without informing M'Cormick that any exception was taken to the entry, he ventures to make the alteration by an entire obliteration of the entries previously made by himself in the regular course of business. After this unauthorized act, to call it by no harsher name, what confidence could M'Cormick repose in the fidelity of the clerk, or how could he expect that his interest would weigh a feather in opposition to the wishes of his partner, who had acquired, in some manner, an improper control over their common agent? It would be little to the purpose, even if, as is alleged, the correction was an immaterial one; but what evidence have we of this allegation? Mr Brackenridge did not so deem it; otherwise it would be difficult to account for his conduct; and besides, whether the allegation be true or not, it is impossible now to ascertain, as the erasure has been so made as most effectually to conceal the matter which the party, we may infer, felt interested to suppress.

The unpleasant situation of the defendant, standing between the conflicting interest of his employers, has been urged in his favour. But the path of duty was so plain, that it is difficult to believe that the defendant erred through ignorance, even if so flimsy a pretext would excuse the act. He must have known that it would be improper to make an alteration in the books without informing M'Cormick; nor can we believe that Brackenridge could have desired that it should be done; and if he gave such directions, it was clearly the duty of the defendant, upon every principle of honesty and fair dealing, whatever might have been the consequence to himself, to disobey the order. And had he thought proper to pursue this course, he would have entitled himself to the full benefit of his contract. No person is bound to obey an order, come from what quarter it may, to do an act contrary to his duty; nor can he justify himself by such an order, where it affects the rights of others. The law never justifies a wrong, and although in some cases it may be good between themselves, it can in no case be permitted to operate to the injury of others. However it may be as between Brackenridge and the defendant, yet it cannot be allowed to injure M'Cormick. The argument is, that one of two partners has authority to direct the correction of an error in the posting of the books, that the assent of the other partner is to be presumed, unless his dissent has been previously expressed, and that by consequence obedience of such direction would not be a sufficient ground of discharge.

Now admitting this to be true as a general proposition, yet I know of no such principle, either of law or common reason, on which we can presume an authority to one partner to alter the books of the firm to the prejudice of the rights of his co-partner. No man in his senses would give such a power, nor can one be presumed. So far from such an authority being presumed, as an implied power, it would require the strongest evidence to induce

[Singer v. M'Cormick.]

the belief that such a power was ever intended to be conferred. For it would be most unreasonable to suppose that one partner was the agent of the other for any such purpose, although he is his agent for those matters which come within the scope of the partnership, particularly as between the firm and third persons; a distinction which must be constantly kept in mind. If Brackenridge himself had no right to make the erasure, of which there can be no doubt, he cannot communicate the right to the defendant, who was the agent of both. There is, therefore, no justification to the defendant, arising from the fact that he obeyed the direction of one of the firm, which, as has been shown, it was his duty to disregard. The defendant would seem to have been dismissed with the assent of Brackenridge; but without his consent, M'Cormick, we think, was perfectly justifiable in discharging him from the service of the firm; for each has a right to the utmost good faith in their agents. Under the circumstances disclosed by the evidence, M'Cormick could have no confidence in the fidelity of the defendant, particularly when his interest clashed with that of his partner.

We do not feel the force of the distinction which has been urged, between an alteration of the original entries and the alteration of the posting in the leger. It may be, that the one may be more injurious than the other; but it is not the amount of the injury which justifies the act, but it is the improper conduct of a common agent in obeying an order by one partner which injuriously affects the rights of the other, by which confidence in his integrity and impartiality is justly impaired.

Judgment affirmed.