# Orr *versus* Mercer County Mutual Fire Insurance Company.

1. A confession of judgment in a cause at issue in the Court of Common Pleas, on an appeal from a justice of the peace is conclusive upon the defendant as to the right of the plaintiff to recover other payments on the same contract, in subsequent actions, in which the defence is the same as that made before the justice of the peace in the former action.

2. A mutual fire insurance company is impliedly authorized to borrow money to pay its losses and to secure the payment of the same by giving its note.

3. A member of a mutual fire insurance company, liable to an assessment to pay fire losses of the company, paid by borrowed money, is liable to an assessment to pay a judgment obtained on the company's notes given for said borrowed money.

October 14th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ. MERCUR, C. J., and GREEN, J. absent.

ERROR to the Court of Common Pleas of *Mercer county:* Of October Term 1886, No. 92.

This was an action of debt brought by the Mercer County Mutual Fire Insurance Company and John W. Bell, Receiver, against James Orr, to recover an assessment on a policy of insurance. Pleas, *nil debet*, and Statute of Limitations.

The Mercer County Mutual Fire Insurance Company was organized under the provisions of the Act of Assembly approved April 2d, 1856, (P. L. 211), providing for the organization of insurance companies, and was incorporated by a decree of the Court of Common Pleas of Mercer county, made June 28th, 1872.

On November 6th, 1872, James Orr became a member of said insurance company by making application and receiving from said company policy No. 58 in the sum of $4,000, insuring his stock of dry goods, etc., at Wheeler, Mercer county,

[Orr *v.* Mercer Co. Ins. Co.]

for a term of two years. Although the policy was issued to said Orr for two years, he in fact only remained a member of the company for one year. About November 1st, 1873, he sold his store so insured, and a few days thereafter, about November 6th, he came to Mercer for the purpose of surrendering his policy and withdrawing from the company, under the following clause of section IX of the charter: "Any member can withdraw from this company at any time by paying his or her proportion of the losses up to date of withdrawal and surrendering his or her policy."

When Mr. Orr came to Mercer to surrender his policy he met Mr. Seth Hoagland, the president of the company, and told him that he had sold his store and that he had come to surrender his policy, and pay whatever his liabilities were to the company for losses sustained to that date. Mr. Hoagland and Mr. Orr went to the office of Mr. W. J. McKean, who was an acting agent of the company, and after some figuring Hoagland announced that Orr's proportionate share of the losses was thirty-seven dollars or thereabouts, which amount Orr thereupon paid, and surrendered his policy,

During the year Mr. Orr was a member of the company, viz: from November 6th, 1872 to November 6th, 1873, the following policy-holders suffered loss by fire: Hofius, Gibson & Co., November 15th, 1872, loss $3,000; J. H. Cover, December 1st, 1872, loss $1,050; Mercer Woolen M'f'g. Co., February 21st, 1873, loss $5,000, or a total of $9,050.

The directors, or managers, of the company did not proceed to assess the policy-holders liable to make good said losses for the purpose of paying the same, but with some money in the treasury derived from premiums and $6,000 or $7,000 borrowed from Burd & McClure, bankers, to whom they executed company obligations or notes, individually guaranteed by them, they paid off said losses and satisfied the claims of said sufferers by fire against the company. The money thus borrowed from Burd & McClure was not repaid by the company when the notes or obligations given therefor fell due, but said notes were taken up by the directors of the company and new notes in the same form executed and delivered in their stead; and so continued to be renewed from time to time as often as they fell due until Burd & McClure went out of business in the summer of 1875, and then the last renewals of said notes to Burd & McClure were discounted by the Farmers and Mechanics National Bank, and thereafter were renewed in said bank from time to time as they fell due until the summer of 1880.

The Farmers & Mechanics Bank brought suit on its notes against the insurance company and J. W. Bell, the receiver of

said company, and filed as its statement of claim copies of the notes as last renewed to it, viz: one dated July 24th, 1880, at ninety days for the sum of $3,618.90, and one dated August 25th, 1880, at ninety days, for the sum of $3,740.50.

This suit was afterwards marked to the use of Seth Hoagland, who had guaranteed and paid the notes to the bank.

The case as thus made up was tried by a jury and verdict rendered for the plaintiff against the insurance company and receiver for amount due, and judgment accordingly.

The assessment against Mr. Orr in controversy was levied to help pay the said borrowed money.

After Mr. Orr had surrendered his policy and withdrawn from the company in the fall of 1873, he heard nothing further of any claim the company had on him till the year 1877 or 1878, when he received a notice that he had been assessed $120 to pay losses which occurred when he was a member. Suit was brought to recover said assessment before Andrew Robinson, a justice of the peace, and afterwards was brought into the Common Pleas on appeal. Mr. Orr attended court to contest the claim, to show the surrender of his policy in the fall of 1873, and the payment by him of all the company, through the president, demanded at that time, but under assurances from his counsel that if he would allow judgment to go against him it would end the matter forever and the company could then pay its liabilities, he did not make his defence, and allowed his counsel to confess judgment against him for ninety dollars.

In 1880 John W. Bell was appointed receiver of said company to wind up its business, with authority to assess policy-holders to pay such losses as they severally might be liable for. The assessment against Mr. Orr was not, as stated, to pay to the policy-holders who suffered losses by fire during his membership, any part of their losses, inasmuch as the books of the company show said losses to be paid and satisfied. He was assessed to pay notes, now in judgment, dated in 1880, and which were the last renewals of notes originally given for the borrowed money with which said losses were paid as early as 1873.

The Court, MEHARD, P. J., instructed the jury that their verdict must be for the plaintiff.

Verdict for the plaintiff in the sum of $339.20 and judgment thereon, whereupon the defendant took this writ, assigning for error the charge of the court directing a verdict for the plaintiff.

*B. Magoffin*, for plaintiff in error.—The court erred in direct-

ing the jury to return a verdict against the defendant, for the following reasons:

The defendant was not liable to assessment, because he surrendered his policy and paid his share of the losses in the fall of 1873.

All the authorities on the subject in which the plea of former recovery has been held to be conclusive between the parties, was where the judgment on which the plea was based had been determined on its merits: Kilfeffer *v.* Herr, 17 S. & R.. 318; Peterson *v.* Lothrop, 10 Casey, 223; Danziger *v.* Williams, 10 Norris, 234; Foster *v.* Longnecker, 8 Barr, 410; Carmony *v.* Hoover, 5 Barr, 305; Fleming *v.* Ins. Co., 2 Jones, 391; Detrick *v.* Shanar, 14 Norris, 521; Keller *v.* Commonwealth, 1 Am. L. J., 156; Howlett *v.* Tarte, 10 C. B. (N. S.,) 813.

The borrowing of the money by the directors of the company was *ultra vires*, and as the policy holders did not specially authorize the same, they cannot be assessed to repay it.

The Statute of Limitations, together with the anomaly of requiring a policy holder to contribute to the payment of notes bearing date seven years after said policy holder had ceased to be a member of the Company, ought to be a complete defence.

*Edwin W. Jackson,* for defendant in error.—The general doctrine is that a corporation has incidental authority, when not specially restricted, to borrow money for any of its lawful purposes. This doctrine is asserted in all text books and reported cases, without qualification: In Furniss *v.* Gilchrist, 1 Sandford, N. Y., 53, and Brouwer *v.* Harbeck, 1 Duer, N. Y., 114, the right of an insurance company to borrow money to pay losses is recognized. It has been ruled by this court in Smith *v.* Bell, Receiver, (11 Out., 352,) that the Statute of Limitations does not commence to run until an assessment has been levied, although not levied for more than six years after the membership of the person assessed had ceased.

Assuming that a jury might find that the settlement of November 6th, 1873, was made as alleged, the defendant estopped from setting it up as a defence in the present case on account of his confession of judgment in the former action. There is no difference in legal effect between a judgment confessed and a judgment entered on the verdict of a jury: Hopkins *v.* Writ, 2 Norris, 109; Montague *v.* McDowell, 39 Leg. Int., 273; Brown *v.* Mayor, 66 N. Y., 390; Weaver *v.* Lutz, 6 Out., 593; Securt *v.* Zimmerman, 5 P. F. S., 446; Davis *v.* Talcot, 12 N. Y., 184; Gates *v.* Preston, 41 N. Y., 113; Jar-

vis v. Driggs, 69 N. Y., 143; Newton v. Hook, 48 N. Y., 676; Burlen v. Shannon, 99 Mass., 203.

Mr. Justice TRUNKEY delivered the opinion of the court, November 1st, 1886.

There was a former action between these parties to recover an assessment on the same policy, in which the defendant confessed judgment for $99.32. That action was instituted before a justice of the peace from whose judgment the defendant appealed. The transcript and the pleadings are not printed, and it is probable that they do not specifically show both claim and defence. What the claim was, or what was set up as defence, may be shown by oral testimony, provided it does not contradict, and is consistent with the record. The defendant himself testifies that after his surrender of the policy to Hoagland, he was sued before the justice for an assessment made in 1878; that he set up for defence his alleged settlement with Hoagland, and had no other defence to the suit; and that after his appeal, when the cause was on the list for trial, he confessed judgment. That involved the very defence in this suit. The assessment was for a loss before the surrender of the policy, and the defence was an alleged settlement relieving him from liability for such assessment.

The defendant, conceding that the judgment would be conclusive against him so far as such defence is concerned, had it been entered on a verdict after a trial on the merits, contends that at most the judgment by confession is only evidence to be considered with all the other evidence touching the question of settlement, in its determination. We think that proposition cannot be maintained. If the cause was at issue, and the only matter of defence was pleaded formally on the record, or so set up as to be known, and on the eve of the calling the case for trial the defendant confesses judgment in open court, the judgment is as conclusive as if entered on a verdict.

It has been often decided that a former recovery is not a bar, unless the former trial was upon the merits. If the former recovery was upon some technical ground, irrespective of the merits, generally, it will not bar the subsequent action, for the cause of controversy has not been passed upon by a competent tribunal. A person is concluded by a decree, sentence or judgment of a court having jurisdiction, in a suit in which he was a party, in all future trials of the same question, whether that question arises directly or collaterally, provided there be no contract between the parties to the contrary: Boater v. Ins. Co., 6 Mass., 277. A verdict and judgment are conclusive by way of estoppel, only as to those facts which are necessarily involved in them. An estoppel is an admission

or determination under circumstances of such solemnity that the law will not allow the fact so admitted or established, to be afterwards drawn in question between the same parties or their privies : Burlen *v.* Shannon, 99 Mass., 203.

Where an action, brought to recover the first quarter's rent on an alleged parol lease, was defeated on the ground that no such lease had been made, the judgment was a bar to a subsequent action for the second quarter's rent on the same alleged lease : Danzinger *v.* Williams, 91 Pa. St., 234. The fact whether there was a lease between the parties, as alleged, was determined in the first action. Had the plaintiff obtained judgment in that action, it would have been conclusive that the lease had been made, in the subsequent suit. But had there been no defence involving the existence of a lease, the judgment might not have been a bar to a future action for recovery of the second quarter's rent. It is difficult to see why confession of judgment by either party in favor of the other, on the issue raised in the first action respecting the making of a lease, would not have the same effect as if rendered after a trial.

In legal effect while it stands, a judgment by default, or confession is the same as upon a verdict. In a suit before a justice of the peace, by a physician to recover the value of his services, the defendant confessed judgment for the amount of the plaintiff's claim, which the justice duly entered. That judgment was held conclusive against the plaintiff who sued for damages resulting from unskilled and negligent treatment by said physician in the services for which the judgment was confessed : Gates *v.* Preston, 41 N. Y., 113. If that be not the law upon such facts in Pennsylvania, it would be if it were settled here that the judgment for such services involved adjudication of due care and skill.

Suit was brought on two notes against the maker and indorser to recover a payment of interest; the defendant appeared by counsel, but made no answer, and judgment was taken by default. Subsequently, the same plaintiff brought suit against the indorser on three notes, two of them being the two in the former suit, all made in the same transaction, and the defendant set up usury which would have invalidated the notes, and it was ruled that the former judgment was conclusive of the plaintiff's right to recover : Newton *v.* Hood, 48 N. Y., 676.

The defendant cites Howlett *v.* Tarte, 10 C. B. R., N. S., 813, (10 J. Scott) to support his contention that a former recovery to operate as a bar or estoppel in a subsequent action between the same parties must have been a case tried on its merits. That case was an action for rent under a building

agreement; the defendant pleaded that after the making of that agreement, in substitution therefor, the parties agreed that a tenancy from year to year should be created; that afterward notice to quit was given which expired at Michaelmas, 1858, and no rent became due from the defendant after that date. To the plea, the plaintiff replied that he had brought an action against the defendant for rent as having accrued under the said building agreement after September 29th, 1858, and that the defendant pleaded to that action pleas which were not issuable, and thereupon the plaintiff signed judgment. It was held that the replication was bad, and that the defence set up in the plea was consistent with every allegation in the former action. The judgment in the former action was as if by default, and the defence was set up for the first time in the second.

Had Orr made no defence in the first action, this case would come within the principle decided in Howlett v. Tarte. Suit in the latter was on the original agreement. In the first, no available plea was entered, and judgment was taken by default. In the second, the subsequent agreement was pleaded, and that raised a question not involved in the first; it was said that if the defendant attempted to put upon the record a plea which was inconsistent with any traversable allegation in the former declaration, there would be an estoppel. Had he put in the same plea in the first as he did in the second, the case would have been different. There the pleas were at length and of record.

In this action the defendant testifies that his defence is the same that he set up in the former—the only defence he had then, or has now. That was involved in the trial before the justice; to maintain that, he appealed; and that raised the issue. In Howlett v. Tarte there was nothing in the first action that involved admission or adjudication respecting the defence pleaded in the subsequent action. Here, the very matter that was set up against the claim in the former suit and solemnly admitted by the confession of judgment, is sought to be made again the subject of a trial, or adjudication.

The instructions of the court were based on the record of the former suit, and the defendant's own testimony. At first view it would seem to be erroneous to instruct the jury that the plaintiff was entitled to recover, that the defendant was liable for assessment for losses which occurred during the time he held the policy prior to November 5th, 1873, and that the verdict should be for a certain sum, if the calculation was correct. But this is to be understood with reference to the conduct of the trial. There was no question about the assessment being correct. The defendant said he surrendered the

policy on November 6th, 1873; and the assessment first put in evidence was corrected by deducting the proportion which had been included for some losses after that date. Had there been any question of the amount, it should have been submitted. The controverted points were of law, not of fact.

The losses were paid to the persons entitled, soon after they became due, with money borrowed for the purpose. That these payments ought to have been made is not denied. Notes were given for the borrowed money, and it is contended that the company had no power to borrow. If this power does not exist the company might be put to unnecessary costs and expense in suits by claimants, while its members are resisting at every step in the collection of assessments. "A corporation is impliedly authorized to borrow money, and has the incidental power to give security for its payment. As such security a corporation may give its note:" Taylor on Corp., § 125. This doctrine is affirmed in Furness *v.* Gilchrist, 1 Sandford, 53.

The company still owes the money and the defendant has not paid his proportion. Did the borrowing of money and paying the losses immediately, discharge the members of the company from liability to pay assessments according to their contract? This has not been contended. If liable at all after such borrowing and payment, that liability continues the same as if the moneys were still owing to the several persons who suffered the losses, instead of to those who loaned the money for their payment.

Judgment affirmed.