## Mary E. Jones, Administratix of John A. Jones, deceased, Appellant, v. A. P. Farquhar.

*Equity—Accounting—Practice—Master's findings.*

On a bill in equity for an account, it appeared that the plaintiff and defendant had entered into a written agreement by which the defendant was to manufacture a certain article, and the plaintiff was to contribute his services in perfecting the article and in making sales of it. The profits were to be divided between the parties. No time was set for the termination of the contract. Defendant testified that subsequently he stated to plaintiff that he would not continue the agreement unless he was allowed twenty-five per cent for shop expenses. Defendant's testimony on this point was supported by that of another witness, and it appeared also that he could not continue to manufacture the article profitably unless some allowance was made to him for shop expenses, and that without such allowance, plaintiff's profits would have been unreasonably large. Plaintiff denied by his own testimony that any such statement had been made by defendant, but he admitted that for two years he had settled on the basis contended for by defendant. He was contradicted by a number of witnesses upon material matters. The master found in favor of the plaintiff. The court below overruled the master's finding of fact. *Held,* that the decree of the court should be sustained.

Argued May 17, 1898. Appeal, No. 475, Jan. T., 1897, by plaintiff, from decree of C. P. York Co., on bill in equity. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an account. Before BITTENGER, P. J.

The facts appear by the opinion of the court below which was as follows:

After considerable correspondence between John A. Jones, since deceased, who was plaintiff in this case, and who was an inventor of drill points, and a successful salesman of agricultural implements, then residing in Wilmington, Del., and A. B. Farquhar, the defendant, residing near the city of York, Pa., and largely engaged in the manufacture of agricultural implements in his extensive shops in said city of York, said parties on February 14, 1881, entered into the following agreement:

"Article of agreement made & concluded this 14th day of Feb. 1881 by & between A. B. Farquhar of York Penn. of

the first part, & John A. Jones of Wilmington Del. of the second part witness as follows.

" Whereas, the said parties have a common interest in the perfecting and preparing for sale and use of a certain grain drill, which has not yet been fully made and constructed, & are desirous to enter into a common enterprise and engagement for the purpose, therefore it is hereby mutually agreed between them that the first of said drills shall be gotten up & constructed at the Penn. Agl. Works in said town of York, of which the said A. B. Farquhar is the proprietor.

"The said John A. Jones to give his services & advice in assisting to get up said drill, which shall be his full equal contribution to the expenses thereof.

"After one such drill has been completed & tested, to be patented jointly between said parties, & any changes or improvements that either the said A. B. Farquhar, his men or the said John A. Jones may thereafter make upon the same to be to the mutual benefit of said A. B. Farquhar & John A. Jones. We agree to finish one machine & make it a first class device as soon as possible, and after we are satisfied with its work, to make every effort consistent with sound judgment to push the same.

"The said A. B. Farquhar agrees to build the drills to fill orders in good time & to supply a reasonable demand, & the said John A. Jones agrees to give his time and attention toward introducing & selling them in connection with his points, all expenses such as advertising, traveling, &c., in the interest of the drills to be borne equally between the parties.

"The books & accounts to be strictly kept and always open for the inspection of either of the parties. The profits above the actual cost of the drills & the necessary expenses of advertising, introducing & selling to be divided equally between us. We agree to submit all correspondence in regard to the drills for the inspection of either party & are not to sell a drill on time without the consent of both parties, & should one or more be sold to persons failing to pay, the loss of the actual cost of the drill & expenses attached to it to be borne equally between us.

"Witness present:

"FRANK L. ATCHISON,     A. B. FARQUHAR.    (    )

"JOHN HOFF.              JOHN A. JONES.     (    )"

In pursuance of said agreement the parties in 1881, entered upon the building of an improved grain drill, at the works of the defendant, the plaintiff having come to York and entered the shop of the defendant, where the plaintiff and defendant's employees engaged in getting up and perfecting a drill intended and believed by them to be the best in the market. In doing this they found it necessary to use a patent fertilizing attachment, the patent for which was owned by the Spangler Manufacturing Company; and the right to use this device was obtained, upon an agreement for the payment of a royalty, for the use of the said patent. About a year was consumed in this work of getting up a drill. The defendant expended the sum of about $2,000 in this and the plaintiff contributed his services. A patent was not obtained, more probably for the reason that the drill built, approved and adopted was not a patentable drill; and the parties entered upon the manufacture and sale of drills. The plaintiff had charge of the books pertaining to the drill business during the continuance of the business except the book containing charges for drills sold which charges were kept in the books of the defendant in his general manufacturing business. These books were, during all the time of the continuance of the business between plaintiff and defendant, open to the inspection and examination of the plaintiff.

At the end of the second year a settlement was made of the business, in which the plaintiff fell in debt to the defendant in the sum of $50.00, for which sum the defendant gave the plaintiff credit on the books. The business of 1881 and 1882 was neither extensive nor profitable. As to the circumstances and terms of said settlement the evidence is conflicting, as well as the terms upon which the business was continued to the fall of 1886. The defendant contends that said settlement was made upon the basis of adding to the naked cost of the drills manufactured, said cost being the actual cost of the material used and the cost of labor in their manufacture, twenty-five per cent for shop expenses, enumerated by him, and that at the time of said settlement he informed the plaintiff that unless this added shop expenses of twenty-five per cent of the naked cost of the drills was conceded by the plaintiff, the manufacture of the drills could not continue and that the plaintiff agreed, expressing the wish that the cost might be reduced to $50.00 per drill,

not counting the Spangler royalty, or costs of selling. The plaintiff admitted in his testimony that he settled for the first two years on the basis contended for by the defendant, under protest, but denied that at said settlement he was informed by the defendant that the business could not continue without the addition of the twenty-five per cent shop expenses, to the naked cost of the drills ; and that he agreed to the same. He admitted that he told defendant "he thought the drill could be built for fifty dollars, including Spangler's royalty. He said he would build them at that if he could." Upon this question as to how the shop cost of the drills should be estimated, fixed or determined, and what that cost actually was, under the agreement of the parties, the decision of this case largely depends. A great mass of testimony was heard by the learned master, the taking of which testimony was had, from time to time, between December 19, 1887, and December 31, 1894. After argument, the master gave notice to the counsel of his intention to file his report, when exceptions were filed. In this report he finds the total amount received by defendant for drills in the years 1883, 1884, 1885 and 1886 was $126,040.42 and after allowing a credit for cost of drills (as found by him) and payment on account, he finds a balance due the plaintiff including interest, of $16,201.07. Exceptions were filed by the defendant and an amended report was made and filed reducing the interest $5,065.33, leaving a balance due plaintiff of $11,135.74. This amended report was filed; the plaintiff excepted to this reduction in the interest.

There are no exceptions by either of the parties to the amount found by the master to have been received by the defendant. The plaintiff's exceptions are to the disallowance of interest claimed. The defendant's are to amount fixed by the master as the cost of the drills in their manufacture, and the carrying over of a portion of them from one season to another, the amount found to be due to the plaintiff, the allowance of interest, and the imposition of costs upon the defendant.

We will first consider the exceptions filed by the defendant. The learned master, we think, clearly erred in treating John A. Jones, the plaintiff, as the only credible witness in the case, in reference to testimony in which there was a conflict between the testimony of the plaintiff himself and the defendant and

other of his witnesses. That the learned master did this is stated substantially by himself in his report, as follows:

" A number of attempts were made to contradict Mr. Jones, who died while this case was pending, and in his argument, the solicitor for the defendant made a vigorous attack upon his veracity. The master therefore deems it his duty, in justice to the deceased and to the court, to state that in his opinion Mr. Jones was a perfectly frank and truthful witness, who answered all questions as fully and as accurately as lay in his power, in view of the complex and involved questions that were so frequently asked him, and in all cases where attempts have been made to contradict him the master has accepted and relied upon the testimony of Mr. Jones. . . . Many of these attempts at contradiction resulted in the corroboration of Mr. Jones, as appears from the letters above referred to and the testimony of John Hoff, who swore that it was the defendant and not the plaintiff who sold him the drill, and stated that the cost was fifty-five dollars."

Since testifying, John A. Jones, the plaintiff, has died. It is not pleasant to comment unfavorably upon his testimony as we are required to do here, after his lips have been sealed in death, but it must be said that a careful reading of the testimony reveals the fact that he stands contradicted upon matters material in this case, by A. B. Farquhar, the defendant, F. James Evans, F. W. Ziegler, Henry W. Eisenhart, John Hoff, William E. Farquhar, and others.

The master says in his report that Hoff does not contradict the plaintiff, but corroborates him. Is this so? The following questions were propounded to and answered to by John A. Jones.

" Q. Did you not explain to John A. Hoff that $55.00 was the absolute cost of a drill, or words to that effect, shortly before he bought the drill from you, or you and Mr. Farquhar? A. No, sir. I made no explanation to Mr. Hoff, whatever. Q. Did you not state to John Hoff shortly before he bought the drill, if he bought one, that $55.00 was the absolute cost of a drill or words to that effect? A. No, sir. I never mentioned prices or figures to John Hoff."

John M. Hoff testifies as follows:

" I asked Mr. Farquhar what he will take for a drill. He

said $55.00, that was the cost of manufacturing and the expenses; but I should go and see Mr. Jones, and ask him and see whether he was satisfied, and Jones said he was for me to have it. Jones said that was about cost so I got the drill and paid $55.00 for it."

Would Jones have said he was satisfied and was for Hoff to have the drill, "that was about cost," unless Hoff had stated to him the amount to be paid—$55.00? Certainly not, and is not this testimony a flat contradiction of John A. Jones's testimony, just quoted? He knew the price to be paid, and declared that $55.00 "was about cost."

Neither did John A. Jones testify with that frankness for which he is so highly complimented by the learned master, concerning the settlement in 1883 "while Farquhar was washing his hands" frequently repeated and interjected; and, in regard to the production of the statement demanded by Mr. Stewart, solicitor for defendant. This paper, marked "No. 1, June 21, 1893," was afterward produced and admitted in evidence, by agreement, to show the amounts received by plaintiff from the defendant, on account of the drill business with exceptions as to several items. This is virtually a confession of the correctness of the statement. It should have been promptly produced to counsel, on demand without hesitation or prevarication.

The learned master having erred in his estimate of the value of the testimony of John A. Jones where the same was contradicted, he naturally fell into the error of finding that at the settlement in 1883 "the defendant did not say to the plaintiff that unless the plaintiff agreed to the above method of calculating the cost of the manufacture of drills by the addition of twenty-five per cent of the naked cost of drills for shop expenses, the business must stop, and also that the plaintiff did not agree to that method of calculating the cost."

To sustain this finding he has the testimony of John A. Jones, the plaintiff, alone, while A. B. Farquhar and F. James Evans unequivocally contradicted him. Besides the circumstances bear out the testimony on the part of defendant, viz: the settlement in 1883, for the preceding years, on the basis claimed by defendant for ascertaining cost of manufacture of drills, by adding twenty-five per cent for shop expenses; the selling of a drill to Hoff at $55.00 by the parties; Mr. Jones saying that

was about cost; the continuance by the defendant of the business with the plaintiff when it is manifest, from the facts proved, that it required $50.00 to $55.00 for the materials, work and shop expenses, such as wear and tear of machinery, coal, oil, waste, superintendence, foremen and draymen, etc., to manufacture a drill for the market; all show the probability of the defendant's demand, and refusal to continue the manufacture of the drills unless his basis of estimating the cost of manufacture was accepted.

John A. Jones's admissions that he told Mr. Farquhar at the time of the 1883 settlement, that he "thought the drill could be built for $50.00, including Spangler's royalty" corroborates the testimony on the part of the defendant. It is not probable nor credible that the defendant, in view of the settlement of 1883, at $55.00 per drill, with a full knowledge of the naked cost, or cost of labor and material, and the certainty that shop expenses had to be added and were as much expenses of manufacture of the drill as the materials for the labor on the same, and that all amounted to about $55.00, including the royalty, would continue in the business of making the drills at naked cost, plus the $2.50 or about that, royalty. In addition to the weight of the testimony of the witnesses testifying on this branch of the case, the facts and circumstances proved in the case, the partial admission of the defendant as to the cost of the drill, above referred to, and the continuance by the defendant in the drill business, all tend to prove that the plaintiff was informed by defendant of the demand of twenty-five per cent for shop expenses, as an item of expense in the manufacture of the drill, and the agreement thereto, by the plaintiff. What was the defendant to gain by the further continued manufacture of these drills at naked cost,—the cost of work and materials. There was not any patent on the drill, and the defendant, could therefore, have continued the manufacture of the drills on his own account. The cost of manufacture was first to be deducted, also the expenses of sale and then a division of the profits. What was the defendant getting for his relinquishing shop expenses? That shop expenses were part of the cost of manufacture is conceded by the plaintiff. How were the shop expenses to be ascertained and fixed except by a percentage, shown in the manufacture? And where is the evidence in the case that twenty-five per cent is too high a rate?

There was no time fixed for the continuation of the business and the defendant had a right to determine the alleged partnership at any time, upon notice. The defendant therefore had a right to make the demand, and if the plaintiff agreed thereto he cannot now, after the defendant has acted upon it by the outlay of large sums of money and the manufacture of drills for four years, repudiate his agreement. He may have intended to do so when Mr. Evans asked him shortly after the settlement, "Mr. Jones, if you were not satisfied why did you accept the settlement?" and he replied: "It is not always the best policy to show your hand," but he is estopped by his acts.

For the reasons stated we think the learned master erred in not finding from the evidence facts which he says in his report would materially affect the legal aspect of the case; that at the settlement of 1883, made on the basis claimed by the defendant, the defendant informed the plaintiff that unless that basis for ascertaining the costs of drills was agreed to he would not continue to manufacture drills under the agreement, and that the plaintiff agreed to the defendant's demand.

The learned master also is in error in his construction of papers "Nos. 3 and 4" (estimate of costs of drills) and also in his finding that the plaintiff accepted, only the naked cost column of the estimate, paper "3."

The overwhelming testimony is that the second column "naked cost," shows the cost of labor and material in the manufactured drill and no other element of cost or expense. The master finds that "it includes all items of cost entering into the manufacture of these drills, as contended for by either party, except cost of the plant and interest on the investment."

His allowance of the royalty as a separate item of cost in addition to the "naked cost" of manufacture, and five dollars for office expenses, advertising and expense of sale for each drill, in addition, shows the fallacy in his conclusions. Besides the plaintiff himself admits that the cost of carrying over, repainting drills, insurance, interest, storage, coal and steam are items of cost of manufacture. Where is there any evidence that these and other items of shop expenses, which Mr. Jones says he may have omitted, were included in the amounts set down in the "naked cost" column of estimate marked 3; and who testifies or where is there any proof that the said estimate is not just

what it shows on its face, viz : that column one is the "drill or shop cost" and column two the "naked cost?" We have not found any such proof in the great mass of testimony which cumbers the case. The error in this finding is so manifest that we are at loss to see how the learned master could have fallen into it. So in relation to his finding that the "naked cost" column, only, of estimate three, was accepted by the plaintiff, and that the other column, marked drill cost, was not accepted by him. The plaintiff himself does not even so testify. He says he accepted defendant's estimate. What estimate? Why, clearly the whole of estimate three, including the column showing the "drill cost." That is the only part of the estimate showing shop expenses.

The evidence of Samuel N. Jessop and W. A. Maigne convincingly shows that the "naked costs" column of estimate "3," shows the cost only of labor and material. This testimony is full and clear as to items and particulars, and is overwhelming. It establishes the cost of labor and material as contained in the second column of the estimate. The learned master's refusal to consider this testimony, and his finding in the face of it, that in this "naked cost" column was included all cost of manufacture "except the cost of the plant and interest on the investment" is to us inexplicable. The "drill costs" in the first column of the estimate "3" is less than $50.00, including Spangler's royalty, for which the plaintiff testified that he told defendant at the settlement in 1883 he thought the drill ought to be built. These findings of the master are so fallacious, without evidence to sustain them, that they must be set aside.

The learned master also erred in finding that there was no sufficient evidence to find the number of drills carried over from year to year, or the cost of carrying them over.

Many of the witnesses testified that drills were so carried over, and that from $5.00 to $7.00 per drill, so carried over and repainted, interest on same, etc., would be a reasonable sum to add to cost thereof. In regard to the other part of the master's finding, as to the number of drills so carried over, the testimony of Captain Henry B. Waltman fixes the number of drills carried over each year, at from thirty-five to fifty, and a large amount of drill materials. This is not contradicted. The master should have found the number of drills carried over each year,

at, at least the smaller number testified to, and allowed the defendant credit for the same in the account stated. The plaintiff admitted that this is a part of the cost of the manufacturing of the drills, and the defendant is clearly entitled to a credit of $5.00, the smallest sum mentioned in the evidence, for the drills carried over, estimated at thirty-five each year, the smaller number mentioned by the witness.

These errors in the finding by the master lead him into an error in stating his account, attached to his report, of over $18,000, in the amount constituting the cost of the drills, and injuriously affects the defendant to that extent.

The profits were enormous on the account, as stated by the master, being over thirty-three per cent of the capital invested. The plaintiff's income was, per year on that basis, $5,205.60, without the investment of a single dollar as capital by himself, or furnishing any patent, in connection with the drill. His drill points were not used to any appreciable extent, having been found too expensive. His only contribution to the business was his personal services. The largeness of the profits as found by the learned master is itself enough to show the fallacy of his conclusions. Had such profits been realized defendant's extensive shops would have been devoted, entirely, to the drill business, and instead of retaining the services of the plaintiff, without any necessity, the defendant would doubtless have dissolved his connection with the plaintiff and assumed the entire business. This was in his power, there being no time limited for the continuance of the alleged partnership. The testimony as to the receipt of average profits of five per cent by the defendant in his other business of a similar character, renders it certain that thirty-three per cent could not have been realized in this drill business.

Upon the calculation made by the court, on the basis claimed by the defendant, and allowed, the percentage of profit was over eighteen per cent, and the annual income of the plaintiff was $2,925.77, a very handsome income for one occupying his business relations, and having his business abilities.

We sustain the exceptions filed by the defendant, to the extent that they apply to the subject-matters of the errors above specified.

The exception to the imposition of costs, on the defendant,

is dismissed, for the reason, that the facts and circumstances, in our opinion require that these costs be paid by the party against whom the decree is made, in regard to a balance claimed to be due. At the time of the filing of the bill a balance was due the plaintiff, and notwithstanding a payment of over $5,000, since the commencement of this suit by defendant to the plaintiff, a balance is still due his estate. After the long delay suffered by the plaintiff in the receipt of his moneys, and the great expense incurred in the litigation, we think it would be inequitable to require his estate to pay any part of the costs.

The exceptions filed by plaintiff are to the nonallowance by the master of interest on the whole balance of $10,280.43 found in his original report, instead of interest only, on the sum of $1,461.50, as in the amended report. The learned master felt bound to disallow interest on the whole balance as claimed by the plaintiff upon the authorities cited, among which are Gyger's App., 62 Pa. 73; Grubb's App., 66 Pa. 117; Brown's App.,. 89 Pa. 139; Rehill v. McTague, 114 Pa. 82. These and other cases show that as between partners, interest will not generally be allowed until a balance has been struck and the amount payable to partner claiming a balance ascertained.

. The principle that "in the settlement of partnership accounts the allowance or refusal of interest depends upon the circumstances of each particular case; any unyielding rule would work injustice in some case," is however clearly recognized and enunciated in these cases, as well as in the late case of Magilton v. Stevenson, 173 Pa. 560.

The business relation between the parties to this suit scarcely amounted to a partnership. It was an association for the single purpose of manufacturing and selling grain drills, a joint undertaking, the defendant to furnish the capital and manufacture the drills, the plaintiff to be in immediate charge of the drill business and assist in the sale of the drills and keep certain of the books required to be kept. They were to share equally the net profits, and no losses are shown by the proof. There was no partnership name. The drill circulars were issued in the name of A. B. Farquhar, and the testimonials therein, addressed to him. The notes were made payable to A. B. Farquhar and bore interest. The business was of such a character and in such condition, that at the time of the bringing of this suit, the

defendant could have promptly accounted to the plaintiff. This the defendant did not do, nor did he account, at any time, during the pendency of the suit. The notes he held, bore interest, and it did not matter whether they had all been collected at the time he was required to account or not. He could have said so much of the assets, in his hands, consisted of promissory notes bearing interest, and tendered the plaintiff one half of said notes, as part of his share of the profits. For the reason that he did not account when required to do so; that he drew interest on the notes until paid, and had the use, in his business, of the balance remaining in his hands — making interest on said balance — he must be required to pay interest to the plaintiff for the amount found to be due the plaintiff. If even the parties were partners, which is most questionable, the case comes within the rulings of the exceptional cases, when interest may be allowed. Here there were no intricate matters to settle, no debts to be paid, no accounts to close, or losses to adjust, by the defendant, before the profits could be ascertained. The reasons for nonliability for interest entirely fail. The partnership (if any) had ended, and the account could readily have been stated, and the rights of the parties ascertained; as in Magilton v. Stevenson, cited supra, where interest was allowed. "If a defendant offers to pay as much as in justice he ought, and the plaintiff refuses to receive it, and brings an action, it would be wrong that the defendant should pay full interest after being driven to the expense of defending himself against an unjust suit. But in the present case the fault does not seem to be altogether on either side. The plaintiff insisted on too much, and the defendant offered too little. There was necessity, therefore, for a suit. That being the case, and there being no reason to suppose that the defendant has not made use of the money, we think he should be chargeable with interest:" Delaware Insurance Company v. Delaunie, 3 Binn. 295. So we think here, and in the account which follows we accordingly charge the defendant with interest on the balance in his hands, from time to time, as will appear fully in said account to be stated by us.

And now, February 9, 1897, on due consideration, it is ordered, adjudged and decreed that the report of the learned

master be set aside. The account between the parties is stated as follows:

| | | |
|---|---:|---:|
| Total amount received for drills manufactured and sold, during the years 1883, 1884, 1885, and 1886 | | $126,040 42 |
| Deduct cost of manufacture, as follows: | | |
| As found by the master | $70,154 31 | |
| Add 25 % for shop expenses | 17,538 58 | |
| Also royalty paid J. W. Spangler | 4,956 25 | |
| Office expenses, advertising and selling, etc., $5.00 per drill | 9,285 00 | |
| Expenses of carrying over 35 drills each year, in 1883, 1884, 1885 and 1886, 140 drills, at $5.00 each | 700 00—102,634 14 | |
| | | 2 ) 23,406 28 |
| Share of the plaintiff | | $ 11,703 14 |
| Deduct amount received by plaintiff, before suit | | 5,536 27 |
| | | $ 6,166 87 |
| Add interest to January 1, 1890, (interest between July 1, 1888, and January 1, 1890, period of manufacturing of peach cullers, etc., for plaintiff by defendant, at three per cent) | | 832 50 |
| | | $ 6,999 37 |
| Paid January 1, 1890, in work, as above stated | | 5,005 42 |
| | | 1,993 95 |
| Add interest to Feb. 9, 1897 | | 850 11 |
| Balance due plaintiff | | $ 2,844 06 |

which balance of two thousand eight hundred and forty-four dollars and six cents (2,844.06) the defendant is ordered to pay to the plaintiff's administratrix, Mary E. Jones, and that the defendant pay the costs of this suit, including the master's fee, as fixed by the court.

*Error assigned* was decree of the court.

*Nevin M. Wanner*, for appellant.—The findings of fact of a master, an auditor or a referee made under the peculiar advantage of both seeing and hearing the witnesses are not to be set aside by the court, except for clear and palpable error, and for the most conclusive of reasons: White's App., 36 Pa. 124; Brua's App., 55 Pa. 294; Landis v. Scott, 32 Pa. 499; McConnell's App., 97 Pa. 31; Bedell's App., 87 Pa. 510; McClure v. Times Publishing Co., 169 Pa. 213; Philadelphia Co. v. United Gas Imp. Co., 180 Pa. 235; Gibbons v. Moyamensing Hook & Ladder Co., 184 Pa. 608; Gonser v. Smith, 115 Pa. 452; Eichman v. Hersker, 170 Pa. 403; Southern Maryland R. R. v. Moyer, 125 Pa. 506; Bruch v. Philadelphia, 181 Pa. 588.

*Jere S. Black*, with him *Francis Farquhar*, for appellee.—This Court has held many times that where a master's finding is a deduction from undisputed facts, or from uncontradicted evidence, the controlling reason for the application of this principle is not present because in such case he has no greater facilities for reaching a correct conclusion than the court has in passing upon the exceptions to his report: Phillips's App., 68 Pa. 130; Hindman's App., 85 Pa. 466; Kutz's App., 100 Pa. 75; Cake's App., 110 Pa. 65; McConomy v. Reed, 152 Pa. 42.

PER CURIAM, May 30, 1898:

A careful consideration of the record in this case has not only satisfied us that there is no substantial error in the conclusions reached by the court below, but also that it would serve no useful purpose to consider in detail the several specifications of error on which the appellant relies.    We find nothing in either of them that would justify a reversal or modification of the decree.    They are all overruled; and, for reasons given by the learned president of the common pleas, the decree is affirmed and the appeal dismissed at appellant's costs.