## DeArmit *v.* Milnor, Appellant.

*Guardian and ward—Sale of real estate—Agreement to pay commissions Fraud.*

In the absence of specific provisions in the instrument creating the trust, a guardian has no power to sell the real estate of a minor without the approval of the orphans' court, nor to enter into a contract to pay commissions for effecting such a sale without such approval.

Where a guardian contracts to pay commissions on the sale of the ward's real estate, and partition proceedings are resorted to for the purpose of effecting the sale, and in that manner securing the approval of the orphans' court, the agents with whom the agreement was made for the payment of commissions, cannot recover such commissions where it appears that one of the agents, acting for his firm, was guilty of bad faith in attempting to depress the price of the property at the sale.

Argued April 15, 1902. Appeal, No. 43, April T., 1902, by defendants, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1899, No. 606, on verdict for plaintiff in case of Julia A. DeArmit, Guardian of Sarah E. Rath, Deceased, v. Charles G. Milnor and Leonard A. Clark, trading as L. A. Clark & Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit to recover a share of rents. Before McCLUNG, J. At the trial it appeared that the defendants who were real

estate agents set off a claim for commissions for the sale of the ward's interest in land.

The court charged in part as follows:

[The plaintiff here was acting as guardian for a minor, and it turned out that the property had to be sold, or it was known all along that it had to be sold under an order of orphans' court, and for some reason the orphans' court required it to be put up at public sale; but the theory of this whole matter, and that is the way it worked out, was that the public sale was for the purpose of securing the purchaser, which these defendants had obtained at $25,000.] [3]

Now, if for the purpose of consummating this sale, it was necessary to sell at public sale, but still the purchase was made by the party whom the defendants secured, and the purpose of the parties in making this agreement was carried out, and the defendants acted in good faith, then they would be entitled to their commission in this case.

[It is admitted that Dr. Bingaman, the purchaser whom they obtained, did buy the property; that it is said that the defendant, Clark, did not act in good faith. He being employed by the plaintiff and the co-owners of the plaintiff was bound to act in their interest.] [4] It would not interfere with that for him merely formally to bid it in for Dr. Bingaman, the purchaser, Dr. Bingaman being away, if it was understood by all parties. But if he, instead of working for them, undertook to work for the purchaser and to get it at a lower price, or attempted to get it at lower price, then he would forfeit all right to commissions. He says that he was not working in the interest of Dr. Bingaman, and the other parties have nothing definite excepting the fact that he suggested that they might get the property on their hands; that is, that he did something which had a tendency to warn off bidders and prevent them from bidding it up on him to the price that he was to give for it. He says that that was only a joke; and if it was, then it goes for nothing. The law looks at these things in a common-sense way. There is only one suggestion that the defendant, Clark, makes here that would seem to work against him; that is, that he had in his mind the knowledge that they had agreed to take $23,000. It does not matter, as I suggested before, if

they had been willing to take ten, if he undertook to play false to them, and to get it down a dollar, then he no longer was entitled to his commission; and if he attempted to get it down again to $23,000 in behalf of Dr. Bingaman, he would forfeit his commission. But he says that he did not do that; and only suggests this as showing that he was working for them to get them the highest price, and that whilst he allowed the property to be bid up slowly, that everybody knew that he was there to bid the $25,000, and that they were at perfect liberty to bid it up on him, and that it was really simply a consummation of the understanding that was had beforehand, that Dr. Bingaman was to get this property at $25,000, and it is admitted that he did get it.

[Now, if Clark acted in good faith, and this result came about as it admittedly did, then he would be entitled to his commission. If he did not act in good faith, then the result would not control his right, but he would forfeit his commission. There is where the pinch of the case is, the question being whether you will credit him with $125, or will not credit him. Whatever you do, you will add interest to the balance that you find due the plaintiff from the time it should have been paid, and render a verdict for the entire amount. By the entire amount I of course mean the balance you find with interest.] [5]

Verdict and judgment for plaintiff for $155.75. Defendant appealed.

*Errors assigned* were (3–5) above instructions, quoting them.

*William F. Wise,* for appellant, cited ; Sweeney v. Ten Mile Oil & Gas Co., 130 Pa. 195 ; Keys v. Johnson, 68 Pa. 42 ; Duffield v. Hue, 129 Pa. 94 ; Com. v. Swayne, 1 Pa. Superior Ct. 547.

*H. K. Siebeneck,* for appellee.

OPINION BY W. D. PORTER, J., May 22, 1902:

The plaintiff brought this action to recover the share of her ward out of rents which had been collected by the defendants, as agents managing certain real estate. The defendants sought to set off a claim for commissions alleged to have been earned

by them through a sale of the interest of the ward in the land. The evidence with regard to the sale of the property failed to clearly establish the right of the defendants to a commission upon the ward's share of the purchase money. Priscilla Rath, the ward, owned an undivided one-fourth part of the land. The owners of the other three fourths entered into a written agreement with C. F. Bingaman to sell the property for the price of $25,000, said sale to be subject to the approval of the orphans' court, and they agreed to pay "a commission of two per centum on their proportionate interest to L. A. Clark & Company for their services in negotiating the above mentioned sale; said Clark & Company not to receive a commission unless said sale is confirmed by the orphans' court." The attorney of Julia A. DeArmit, guardian of Priscilla Rath, signed, as attorney for her, a supplemental contract, agreeing to sell the undivided interest of the ward in the property, and to join in the sale thereof on the terms set forth in the contract of the other owners, "provided such sale on my part shall be authorized and directed by the orphans' court." The attorney testified that he signed this paper without consultation with his client or authorization on her part, and there is nothing in the evidence which would warrant a finding that he represented himself to be possessed of such authority. The contract could, therefore, become that of the guardian only by subsequent ratification. The contract signed by the attorney if it had been valid and enforceable, was only an undertaking to sell to Bingaman on the same terms which had been agreed upon by the other owners; it was an agreement to sell to Bingaman and did not covenant to pay commissions to Clark & Company. In the absence of specific provisions in the instrument creating the trust, a guardian has no power to sell the real estate of a minor without the approval of the orphans' court, nor to enter into a contract to pay commissions for effecting such a sale without such approval. This contract never was approved by the orphans' court and the estate of the minor never became, by mere force of the written agreement, chargeable with commissions. The case was tried in the court below upon the theory that the parties had resorted to an action of partition for the purpose of effecting the sale and in that manner securing the approval of the orphans' court. This is the only way

in which a pretense to commissions out of the estate of this minor could have been set up under the evidence.

Accepting the theory that the sale in partition was made for the purpose of carrying into effect the written agreement, the sale was not completed at the time Mr. Bingaman signed the agreement, but when he became the purchaser under the proceeding in partition, when it was approved by the orphans' court. If Clark & Company ever were the agents for the sale of the estate of this minor, the relation continued down until the time the sale was approved by the court. During the existence of the relation, the defendants were bound to exercise the utmost good faith towards their principal and to exert their skill for her benefit. A failure to discharge the duties of the employment must deprive them of the right to commissions for procuring a buyer: Singer v. McCormick, 4 W. & S. 265; Everhart v. Searle, 71 Pa. 256; Pratt v. Patterson, 112 Pa. 475; Wilkinson v. McCullough, 196 Pa. 205; and see the opinion of our brother ORLADY, J., in Linderman v. McKenna, filed during the present term. The jury having found, under instructions of which the defendants had no just ground of complaint that the defendant Clark, who acted for his firm, had been guilty of bad faith, in attempting to depress the price of the property at the sale, that finding is conclusive against the right of the defendants to a commission. The facts being so found, the amount tendered by the defendants before the trial was less than the amount owing, and it is therefore unnecessary to consider the question, as to the allowance of interest, raised by the first specification of error. All the assignments of error are dismissed and the judgment is affirmed.