## Carter, Jr., v. Artcraft Photo-Engraving Company (No. 2)

*T. A. Galbally*, for plaintiff.

*E. Hepburn*, for defendant.

BOK, P. J., December 5, 1951.—These are defendant's exceptions, filed to secure clarification of the finding of the trial judge that the capital stock of defendant had a certain value. There was no other issue at the trial and no exception has been taken to the finding of value.

The present exceptions involve the meaning of the contract between the parties as to when plaintiff should turn over the stock, when defendant should pay him for it, whether interest accrues on any of the finding, and when and in what amount may plaintiff enter judgment.

The contract employs plaintiff and gives defendant the right to discharge him on two weeks' written notice. Such notice was given and plaintiff's employment was ended. The contract then adds:

"It is further agreed that in the event such notice is given Mr. Carter his term of office as Treasurer and Director of the Corporation shall forthwith close and determine and the officers shall have full authority to elect someone else to fill the vacancy thus created and it is further agreed that in the event such notice being given Mr. Carter he will turn over to the Corporation the stock of the Artcraft Photo Engraving Co. for which he is to receive the fair value to be paid over a period of 5 years."

Plaintiff suggests that since payment is to be made to him over five years, he need turn over his stock only on the same basis. Defendant excepted, but withdrew this exception at argument, to the finding that the fair value of the stock "is to be paid in five equal yearly installments". Plaintiff therefore wants to turn in his stock at the rate of 2-1/5 shares per year, as and when he receives each yearly installment. We do not so read the contract. Looked at from corner to corner, it seems to us clear that the purpose was to terminate a relationship at one time but to allow for delayed payment. The phrase "to be paid over a period of 5 years" might as well be in parenthesis, as it refers only to plaintiff's receipt of the fair value and not to his turning over the stock.

While legally plaintiff should transfer his stock to defendant forthwith, defendant has conceded the fair-

ness of his turning it over in five equal amounts as and when he receives payment. This is equitable and is so ordered. Due to bookkeeping difficulties in transferring 2-1/5 shares each year, it is suggested that he turn over two shares for each of the annual payments he receives the first four times and three shares for the fifth.

As for interest, defendant argues that none is due until plaintiff has turned over his stock and its value is ascertained; further, that plaintiff's excessive demand should deprive him of interest prior to judgment. The cases cited for this argument are all trespass cases, where the underlying rule is that damages cannot be ascertained until trial and hence date from then rather than from the time of injury. In proper cases additional damages are allowed in the nature of interest for detention of the money, or delay in payment, and these are refused where plaintiff's demand is so exorbitant that defendant has no alternative but to resist the suit. See Richards v. Citizens Natural Gas Company, 130 Pa. 37 (1889).

The instant case, however, is assumpsit on a contract. In such cases plaintiff's right to his money arises upon breach or demand, not at trial, and this rule applies not only where the damages are liquidated, as in a note for a sum certain, but where the damages are ascertainable even if unliquidated: Carbondale City School District v. Fidelity and Deposit Company of Maryland, 346 Pa. 491 (1943).

A bona fide dispute over the performance of the contract and the amount of the debt is not a bar to interest: West Republic Mining Company v. Jones & Laughlin, 108 Pa. 55 (1884); J. Purdy Hotels Company v. Fidelity-Phenix Fire Insurance Co., 126 Pa. Superior Ct. 260 (1937); Brinton et vir v. Horn et ux., 58 D. & C. 524 (1947).

As for the doctrine of exorbitant demand, it may be that plaintiff asked for much more than he got, but it is also true that defendant offered him substantially less. That plaintiff's demand was $26,000 over and defendant's offer $6,000 under does not provide a yardstick merely because the straddle is uneven. It only shows a bona fide dispute. Under these circumstances interest is not barred: Delaware Insurance Co. v. Delaunie, 3 Binney 294 (1811), approved in Jones v. Farquhar, 186 Pa. 386 (1898); Niland v. Gill, 99 Pa. Superior Ct. 107 (1930); J. Purdy Cope Hotels Company et al. v. Fidelity-Phenix Fire Insurance Co., supra (126 Pa. Superior Ct. 260 (1937)).

The rate of interest, none being specified in the contract, should be the legal rate of six percent: Act of May 28, 1858, P. L. 622, sec. 1; 41 PS §3: Act of April 20, 1949, P. L. 655, sec. 1, 41 PS §3; Wright v. Hanna, 210 Pa. 349 (1904).

Defendant suggests that interest should run only from the date of this opinion because there was no tender of plaintiff's stock and because it is not until now that the amount due has been ascertained. The second reason has been answered above: the damages were ascertainable by means other than court procedure, and the inability of the parties to agree gave rise to an honest dispute which does not bar interest from the time of demand. The first reason is also without merit, for in plaintiff's letter to defendant of September 27, 1950, whose correctness is admitted, plaintiff said: "I therefore offer to sell you these eleven shares. . . . In the event that you refuse to accept the shares. . . . I shall hold the shares, as bailee, for the (defendant). . . ."

This offer is a sufficient tender. Plaintiff was discharged on November 1, 1949, at which time he had the right to offer his stock and be paid. He waited for almost 11 months, during which time we may infer

that there were negotiations. Defendant's president testified that he offered plaintiff $8,000, and while he did not say when, it may be presumed to have been after the discharge. This is not an action for breach of contract but one to realize a mutual obligation: hence only a declaration that plaintiff is ready and willing to perform is sufficient: Henry v. Raiman, 25 Pa. 354 (1855); Williams v. Bentley, 27 Pa. 294 (1856); Douglas v. Hustead, 216 Pa. 292 (1907).

Interest therefore begins to run from September 27, 1950, which is the date when, by offering his stock for a price, plaintiff first demanded his rights: Carbondale City School District v. Fidelity and Deposit Company of Maryland, supra (346 Pa. 491 (1943)).

Plaintiff suggests that judgment should be entered at once for the full amount and that he be allowed to collect it. The base of this idea is that defendant committed an "anticipatory repudiation" by filing an answer that the contract was induced by fraud, that defendant's officers had no authority to sign it, that it was vague, that it was only a display of intention to make a later contract, and that defendant was not interested in buying plaintiff's stock. Section 318 of the A. L. I. Restatement of the Law of Contracts is cited. We very much fear that if this were the law, no one could ever plead a defense to a contract without being guilty of an anticipatory repudiation. Besides, the restatement clearly does not refer to pleaded defenses after suit is brought: it obviously refers to conduct of the parties out of which the litigation grew. And be this as it may, the stated defenses were dropped at trial and the validity of the contract was conceded: the suit was not for breach but to ascertain fair value. Neither party broke the contract. If defendant in its pleading denied the validity of the contract, it would at most refute its argument about interest, since its denial of the contract was as much responsible for

prosecuting the suit as was plaintiff's allegedly exorbitant demand. But we know of no doctrine of "retroactively anticipatory breach, nunc pro tunc". There are cases, like Russell v. Barnes Foundation, 143 F.(2d) 871 (1943), where the breach of one installment brings down at once on defendant's head a series of future installments, but such cases depend on an actual breach that anticipates the rest. Here plaintiff performed services, was discharged per contract, and now wants fair value determined and the contract clarified in the matter of payment.

The trial judge awarded one year's interest too much. Plaintiff's right dates from September 27, 1950, but his contract provides for payments "over a period of five years," i.e., in five equal annual installments. Defendant has a year in which to pay each one. Each installment is $2,797.50. The first fell due on September 27, 1951, and interest should be calculated from then. The next will fall due on September 27, 1952; the third on September 27, 1953; the fourth on September 27, 1954, and the fifth on September 27, 1955. Until these dates are reached no installment applicable to them is due, and no interest runs on it. Interest from September 27, 1951, to date is $31.74. The first installment of $2,797.50 plus $31.74 total $2,829.24, is now payable.

The finding is accordingly modified by the reduction of interest on the first installment. The total finding is reduced to $14,019.23.

As for entering judgment, plaintiff has a poorly drawn contract and we cannot rewrite it for him. What he has, in effect, is a series of promissory notes, without confession of judgment, each one finally falling due on a date certain. If there were a confession of judgment covering the matter, it would be different, but we are aware of no authority that allows judgment to be entered for money not due. Plaintiff has security

from the doctrine of res adjudicata: Orr v. Mercer County Mutual Fire Insurance Co., 114 Pa. 387 (1886); Amshel v. Hosenfeld, 20 Pa. Superior Ct. 369 (1902).

Plaintiff may forthwith enter judgment for the first installment, with interest, in the above sum of $2,-829.24, but cannot enter judgment for the others until their respective due dates are reached, with interest from those dates if payments are made thereafter.