[No appeal was taken from either of the orders in this case.]

JOHN HAMILTON
vs.
THE ANNAPOLIS AND ELK RIDGE } DECEMBER TERM, 1847.
RAIL ROAD COMPANY ET AL.

[RIGHT OF EMINENT DOMAIN—FORFEITURE OF CHARTER—VENDRO'S LIEN.]

NOTHING can be clearer than that private property cannot be taken for public use, without making just compensation to the owner.

The right of eminent domain gives to legislative authority the control of private property for public uses, subject to the condition, that a reasonable and just compensation shall be made to the owner.

Any attempt to exact this power, without complying with the condition, would be at war with the great principles of natural justice, and in direct conflict with the constitution of the United States.

The land in question, having been condemned for the use of the Annapolis and Elk Ridge Rail Road, under the act of 1826, ch. 123, sec. 15, and the inquisition returned to, and duly confined by, the proper county court, the propriety of the condemnation and use of the property, cannot be drawn in question in an accidental or collateral proceeding.

A cause of a forfeiture of a charter of incorporation cannot be taken advantage of, collaterally or incidentally ; but it must be enforced by *scire facias* or *quo warranto* at the instance of the government, and until the government so interferes, the franchise continues.

So long as the charter of a company continues in existence, their property cannot be taken from them, upon the allegation that it was acquired by an abuse of their chartered privileges.

Whether the vendor's lien exists or not, in a case where the property of an individual is taken for the public use in virtue of the right of eminent domain, is a question of no easy solution.

[The bill filed in this cause, alleged, that on the 30th May, 1838, proceedings having been previously instituted by the Annapolis and Elk Ridge Rail Road Company, for condemning a

a portion of the complainant's land, required for the construction of their road, a jury convened for that purpose by the company, met and condemned certain land of the complainant for its use, (which the inquisition stated, was condemned as of an absolute estate in perpetuity,) and awarded to him the sum of $212, as damages therefor.    That, on the 31st of August, of the same year, another portion of his land, was in like manner condemned, for which the further sum of $135 was awarded to him.    That the said damages had never been paid, and no conveyance had been made.    That the road had been constructed over only part of these lands, and the rest had been made the site of a public house, which the company had rented for profit, by reason of which misappropriation, it was contended, that their right to that portion of the land had been forfeited, and that it had therefore reverted to the complainant.    The bill prayed that the company should be decreed to pay the money so due by them, and that in default thereof, it should be perpetually enjoined from passing over that portion of the road, that the equitable lien of the complainant for the purchase money be enforced, and the land be sold for its satisfaction, and that the part occupied by the public house, as above mentioned, be delivered to him, and the company be restrained by injunction, from disturbing him in the enjoyment of it.    The answer of the company stated, that shortly after the damages were awarded to the complainant, the same had been tendered him, which he refused to take; and, that the money so tendered, had been for a long time kept ready, to be given him on application.    That its property had been conveyed to trustees for the benefit of its creditors, and was then vested in James Iglehart, and William S. Green.    That, by an act of assembly, passed at December session 1841, chap. 168, it was authorized to issue bonds, payable partly out of net income and profits, and that it had been, and was, willing to issue a bond or bonds, to the complainant for his debt, or if the court should consider the debt a lien on the property, and that such a course would be proper, it was willing to apply its revenues and profits to pay it.    That the house built by it was useful as a depot, and that the complain-

ant had cut down valuable trees near it, the value of which ought to be deducted from the amount due to him. After this answer was filed, the trustees were made parties by amendment of the bill, and in their answer took generally the ground taken by that of the company ; some testimony was taken, relating to the value of the public house, and the terms on which it was rented, the consideration of which was deemed unnecessary by the Chancellor, under the view which he took of the case :]

THE CHANCELLOR:

Nothing can be clearer, than that private property cannot be taken for public use, without making just compensation to the owner. The right of eminent domain gives to legislative authority the control of private property, for public uses, but this power is subject to the condition, that a reasonable and just compensation shall be made to the owner, and any attempt to exert the power, without complying with the condition, would not only be at war with the great principles of natural justice, which lie at the foundation of the social compact, but would be in direct conflict with the constitution of the United States. It follows, therefore, irresistibly, that as the complainant has not received compensation for that portion of his property, which has, through the medium of this company, been taken from him for public use, that he is now entitled to compensation ; and this compensation is to be paid him, not in the bonds of the company, issued under the act of 1841, but in money.

The bill takes the ground, and the argument of the complainant's solicitor urged the same view of the subject, that the land condemned by the inquisition of August, 1838, was not necessary for the use of the road, and that, therefore, as to that portion of the premises, the company should be ordered by the decree of this court to deliver the possession to the complainant. I cannot bring myself to think that such a decree would be at all justifiable. The 15th section of the act of 1826, chapter 123, which so far as the mode of proceeding in the

condemnation of property, necessary to the construction and repair of the road is concerned, is confessedly made a part of the charter of this company, directs that these inquisitions shall describe the property taken, or the bounds of the land condemned, &c., these inquisitions, thus describing the property, or the bounds of the land condemned, are directed by the same section, to be returned by the sheriff, to the clerk of the county, and by him to be filed, and unless sufficient cause to the contrary is shown, the court is directed to confirm the inquisition at the next ensuing session.

All this was done in the present case. The property condemned was described in the inquisition, which was returned to the clerk of the proper county court, was by him filed, and no cause to the contrary having been shown, the inquisition was duly confirmed by the court, and recorded by the clerk, as directed by the statute. These proceedings took place in year 1838, from which time to the filing of this bill, in 1846, they have remained without objection from any quarter. It seems to me, impossible to contend successfully, that under these circumstances, and in this incidental collateral proceeding, the propriety of the condemnation, and use of this property, can be drawn in question.

A cause of forfeiture of a charter of incorporation, cannot certainly be taken advantage of collaterally, or incidentally. It must be enforced by *scire facias*, or *quo warranto*, at the instance of the government, and until the government so interferes the franchise continues.

*Canal Company* vs. *Rail Road Company*, 4 *G. & J.*, 1, and as the charter of the company cannot be forfeited, unless proceedings for that purpose be instituted by the government, I am at a loss to conceive how their property can be taken from them as forfeited, so long as the charter remains in existence. By the condemnation of the property in question, and the confirmation of that condemnation by the county court, it has been ascertained by the proper authority that such property was required for the purposes of the company. And yet whilst that judgment stands, and the corporate franchises of the company,

under which the condemnation was made, are in full force, it is proposed by a collateral proceeding to take from them their property, upon the allegation, that it was acquired by an abuse of their chartered privileges.   My decided conviction is, that this cannot be done, and that the complainant, having failed to show cause against the condemnation at the proper time, is not now at liberty, to dispute its validity, or necessity.

If by applying this property to a purpose not warranted by the charter, the company have exposed themselves to the penalty of a forfeiture, and to all the consequences which would ensue from such forfeiture, the complainant is not the party, nor is this the proceeding by which the question is to be tried.

But as already observed, the complainant is clearly entitled to be paid the compensation awarded him by the jury, and I cannot think that his right to such payment can be in any way affected by the act of 1841, ch. 168, before referred to.

But the complainant, besides praying for the payment of the sums awarded him by the jury, as damages for the comdemnation of this land, asks that his equitable lien as vendor, may be enforced, and that the land may be sold for the satisfaction thereof.   How far the complainant may be entitled to the lien of a vendor to enforce payment of the purchase money, is a question not free from difficulty.   He did not agree to sell the land, and the proceeding adopted by the company under the 15th section of the act of 1826, ch. 123, became necessary in consequence of the failure of the parties to agree.   By that proceeding the land was taken from him without his consent, and of course there was no contract to sell.   It was a condemnation or dedication of so much of the property of an individual for the public use, taken in virtue of the right of eminent domain; but upon the condition that a just compensation should be made to the owner.   Whether, under these circumstances, the equitable lien of the vendor exists, or not, is a question of no easy solution; but looking to the language of the act, and indeed independently of any such language, it must be conceded, that the property cannot be taken from the complainant until the valuation placed upon it by the jury is

paid or tendered. · The answer alleges a tender, but there is no proof of it, and it cannot of course be assumed without proof.

The complainant is not suing at law for the recovery of the land, but in equity for the payment of the money, upon the ground, that the payment cannot be enforced at law, in consequence of the insolvency of the company. He has forborne to institute these proceedings until the road is finished, and valuable and expensive improvements are made upon the property; and I, therefore, am of opinion; that in equity, he is entitled to no more than a decree for a payment of the sums awarded him by the jury, with interest from the period of the confirmation of the inquisitions by the court. A decree will be signed for that purpose, payable out of the revenues of the company, within some reasonable time, and in default thereof, the revenues will be sequestered until the claim is paid. The complainant is, also, I think, entitled to his costs.

It may be further observed in reference to the prayer of the bill, that the complainant may be restored to a possession of a part of the land condemned, that if any such right exists, under the circumstances of this case, his remedy is by action of ejectment, and not by bill in equity.