CASE 21.—ACTION BY THE LOUISVILLE DRY GOODS COMPANY AGAINST J. W. LANMAN AND OTHERS.— October 26, 1909.

## Louisville Dry Goods Co. v. Lanman

135   163
c138   799

Appeal from Mercer Circiut Court.

W. C. BELL, Circuit Judge.

Judgment dismissed and plaintiff appeals.—Reversed.

1.   Sales—Remedies of Seller—Fraud of Buyer.—If an insolvent, buying goods of plaintiffs, mortgaged the entire stock in or to be in his store, to secure a bank holding his notes and a surety thereon to the exclusion of his other creditors, plaintiffs could avoid the sales on the ground of the buyers' actual fraud in buying without intention or means of paying for the goods, and in intending that they should, the moment they came into his possession, pass to preferred creditors, and retain the goods by detinue or claim and delivery under the Code, or could sue for damages for the deceit and could pursue the additional remedy of sequestrating the debtor's property for payment of his debts under the act of 1856 relating to conveyances by insolvents in contemplation of in-

solvency, or could proceed against the debtor in involuntary bankruptcy proceedings in the United States ,court, if, when they learned of the deceit, that court had power under the limitation of time, to grant them relief.

2. Bankruptcy—Debts Discharged—Liability Growing Out of Fraud.—Under ,Bankr. Act July 1, 1898, c. 541, Sec. 17, subd. 4, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), excluding debts created by fraud from the release of the discharge in bankruptcy, the debt of the insolvent, incurred by purchasing goods on credit with the intention of setting over the goods to certain other favored persons leaving nothing with which he could pay for them or out of which the sellers could make their debt would not be released by a discharge.

3. Bankruptcy—Remedy of Seller—Obtaining Personal Judgment Against a Buyer Adjudicated a Bankrupt.— The federal court being unable to discharge the buyer from the debt, plaintiffs could pursue him in the state courts and obtain a personal judgment against him, though he had been adjudged bankrupt, upon which, after the federal court had exercised its jurisdiction, the writ of fieri facias might issue; but, pending the proceedings in bankruptcy, the state court should stay its execution until the bankruptcy case is finally adjudicated.

4. Bankruptcy—Construction of Statutes.—Act of 1856 (Ky. St. Secs. 1910-1917), providing that a mortgage by a debtor in contemplation of insolvency and to prefer certain creditors shall operate as an assignment of all his property for the benefit of all creditors, except as provided, such transfers to be under the control of equity, etc., is not a bankrupt or insolvency statute.

5. Bankruptcy—Preferential Mortgages by Insolvent.—Ky. St. Sec. 1910, makes a mortgage by a debtor in contemplation of insolvency and with design to prefer creditors an assignment of all the debtor's property for benefit of all creditors, except as provided. Section 1911 (section 2105) gives equity control of perferential mortgages made by a debtor in contemplation of insolvency upon petition of an interested person within six months after the transfer is lodged for record or the property is delivered. Bankr. Act July 1, 1898, c. 541, Sec. 3a (2), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), makes the transfer while insolvent of any portion of his property by a debtor to his creditor with intent to prefer the creditor an act of bankruptcy, and provides that a petition may be filed against an insolvent who has committed an act of bankruptcy within four months after commission of the act. Sec. 60b makes a preference given four months before

Louisville Dry Goods ·Co. v. Lanman.

filing a petition voidable by the trustee. Held, that the federal statute does not invalidate either a perferential mort-gage by an insolvent debtor or his voluntary deed of assign-ment, and if such mortgage is not attacked within the time which will give the bankrupt court jurisdiction, or if the as-signor is not proceeded against by his creditors or does not file petition to be adjudged a bankrupt within the four months allowed by the federal statute, the instruments may be en-forced and the parties thereto granted appropriate relief by the state court when invoked within six months, and, where the state court has been invoked and has taken jurisdiction and possession of the property, it may proceed to a final ad-judication, though the federal court may also have taken jurisdiction of the bankrupt and his affairs.

6.  Bankruptcy—Jurisdiction of State Court.—The state court, having taken jurisdiction, could adjudge a recovery against the debtor in personam in favor of the creditor against whom the preference was made, staying the execution until his ap-plication for discharge in bankruptcy has been acted upon by the federal court.

C. E. RANKIN for appellant.

### AUTHORITIES CITED.

Kentucky Statutes, 1910-1911, &c.; Ebersole &c. v. Adams 10th Bush 83; Downer &c. v. Porter &c., 116 Ky.. 422, 76 S. W. 135; Heidrich v. Silva, 89 Ky., 422, 11 R. 645; Linthicum v. Fenley, 11th Bush, 131; Eblen v. Brooks &c., 106 S. W.. 308; Collier on Bank-ruptcy, 6th Edition, 1907, pages 292, 145, 539, 901, 951; Bankrupt Law of 1867; Bankrupt Law of 1898; Bankrupt Law of 1898, sec. 11; In re Girdes, 4 Am. B. R. 346, 102 Federal 318; Matter of Bay City Irrigation Co., 14 Am. B. R., 370, 135 Fed. 850; In re Eng-lish, 11 Am. B. R. (C. C. A.) 127 Federal, 940; In re Price, 1 Am. B. R., 602, 92 Federal, 987; Chattanooga Nat. Bank v. Rome Iron Co., 4 Am. B. R., 441, 102 Fed. 516; Thompson v. Fairbanks, 13 Am. B. R., 437, 445, 196 U. S., 516.

OPINION OF THE COURT BY JUDGE O'REAR—Revers-ing.

J. W. Lanman was a merchant doing business at Cornishville, in Mercer county. The petition alleges: That the plaintiffs were wholesale merchants, and had sold him bills of merchandise from April to June,

1908, amounting to $473.82, and from June 23, 1908, to July 28, 1908, of $50.46; that on April 28, 1908, the defendant Lanman, being then insolvent, and with the design to prefer some of his creditors to the exclusion of the others, executed a mortgage to the Union Bank of Cornishville, Ky., upon a storehouse and lot situated in Cornishville, "and the stock of merchandise now within or to be within said storeroom, consisting of dry goods, boots, shoes, notions, and whatever articles there may be therein, including furniture and fixtures," to secure the bank in the sums of $1,-495.75 on a note due March 8, 1908, $1,323 on a note due June 4, 1908, and $148.42 overdraft then due the bank; that these debts were in existence prior to the execution of the mortgage, and were secured by a prior pledge of 30 shares of the stock of the bank as collateral; that one S. P. De Baun had since the filing of the suit been subrogated to the rights of the bank by an assignment of the mortgage to him by the bank; and that the mortgage was fraudulent, and executed with the design to prefer the bank and De Baun. It is also alleged that De Baun was bound as surety on the original notes to the bank, and that the mortgage covers all the property of the mortgagee. The mortgage was acknowledged on April 28, 1908, but was not recorded until July 28, 1908. This suit was begun by the filing of the petition and issual of summons on January 14, 1909. The summons was executed by personal service on Lanman, De Baun, and the Union Bank of Cornishville on January 16, 1909. On January 27, 1909, the day on which an appearance and answer were due, the defendants filed a joint answer which they term a "plea in bar," stating that on January 25, 1909, the defendant J. W. Lanman filed in the District Court of the United States for the Eastern

District of Kentucky his petition in bankruptcy, that said Lanman was thereupon on that day adjudged à bankrupt by said court, and that the affairs of the bankrupt had been referred by that court to its reference in bankruptcy. Upon that showing they prayed to be dismissed. A demurrer was filed to the answer by the plaintiffs. The circuit court overruled the demurrer. The plaintiffs declined to plead further, and their petition was dismissed. The plaintiffs have prosecuted this appeal from the judgment.

We have concluded that the judgment is erroneous, when considered upon either of several grounds. The allegations of the petition in this case are not denied. They are confessed as true. It follows that J. W. Lanman was insolvent when he gave the mortgage, and inferentially, when he bought the goods for which he is sued in this case; that he designed by the mortgage to prefer the bank and De Baun to the exclusion in whole of his other creditors. What were the rights of the plaintiffs when they filed this suit? Depending upon the whereabouts of the goods, they had a choice of four courses open to them: (1) To avoid the sales to Lanman, on the ground of his actual fraud in buying the goods without intention or means of paying for them, but intending that they should the moment they came into his possession pass to his preferred creditor, the bank, or his favored surety at the bank, De Baun. This was such fraud as in law, at the election of the sellers, would have avoided the sale, and they could have regained their goods by detinue, or, what is the same practice under our Code, an action of claim and delivery; but perhaps the goods had been disposed of to innocent purchasers before the plaintiffs learned of the fraud. At any rate, it was at the election of the plaintiffs whether they pursued that

remedy, or (2) to proceed in an action at law to recover the value of the goods from the fraudulent vendee—not upon the contracts of sale, but upon the deceit practiced upon them. And (3) the plaintiffs might pursue the additional remedy afforded by the laws of this state to sequestrate the debtor's property for the payment of his debts under the act of 1856 (Ky. St. Secs. 1910-1917), or (4) proceed against him in involuntary bankruptcy proceedings in the United States District Court. The last-named course would depend, for its efficacy, upon whether, at the time the plaintiff's learned of the deceit and of the debtor's transfer of his property, the United States court had the power, under the limitation of time prescribed by the act of Congress, to grant them full relief. These remedies are at the election of the creditors, the vendees. The plaintiffs elected to sue in the state court to pursue the second and third of the remedies outlined above. The question is: Does National Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), give the United States courts exclusive jurisdiction of the affairs and property of a voluntary bankrupt under the circumstances recited above? It is remarked that the existing act defines more clearly the demarcation of the jurisdictions of the federal and state courts, and shows more disposition to not interfere with the local jurisdiction of the latter than did Act March 2, 1867, c. 176, 14 Stat. 517. Certain it is that Congress did not intend to aid fraud in any of the provisions of the act. In truth, the fraudulent were placed beyond its intended benefits, and held to the strictest accountability when their acts came within the jurisdiction of the courts of the United States.

No debtor can be discharged in bankruptcy of a lia-
bility which grows out of his fraud.    Section 17, Act
1898.   It was held in Classen v. Schoeneman, 80 Il!.
304, and Ames v. Moir, 130 Ill. 582, 22 N. E. 535, that
if a debtor buys goods for cash on delivery, obtains
possession of them without payment and immediately
ships them beyond reach of the  seller,  and then
refuses to pay, his conduct is such as to make the
debt a fraudulent one within the meaning of the bank-
rupt law.   It is equally fraudulent, in law and morals,
for one to buy goods with a positive intention not to
pay for them, for if such intention were known to the
vendor he certainly would not sell.   "Its suppression
therefore is a legal fraud."   Benjamin on Sales, 442,
and cases collected by that author.   The cases hold
that such design may be inferred from the conduct
and circumstances of the vendee.   It is admitted here
that he was insolvent, and intended to set over to cer-
tain favored persons the very goods  he  purchased
from the plaintiffs on credit, leaving  nothing with
which he could pay for them, or out of which they
could make their debt.   That is very black fraud.   As
the United States District Court could not have dis-
charged Lanman from the plaintiff's debts created by
his fraud, they were at liberty to pursue him in the
state courts, and obtain a personal judgment against
him, even though he had been adjudged bankrupt, up-
on which, after the federal court had exercised its ju-
risdiction, the writ of fieri facias  might issue; but,
pending the proceedings in bankruptcy,  the  state
court should have stayed its execution until the Uni-
ted States courts had  finally  adjudicated the bank-
rupt's case.

But there is still another branch of this case, of more
importance than the one just discussed.   That is the

right of the state court to proceed to a judgment in rem as against the property embraced in the mortgage and as affecting the bank and De Baun. The determination of that question involves the nature of the mortgage as it affected the debtor's property covered by it, and the rights of the plaintiffs created by that instrument in relation to that property. The statute of Kentucky (sec. 1910, Ky. Stat.), commonly known as the "Act of 1856," concerning the conveyance by insolvents in contemplation of insolvency, is not a bankrupt or insolvency statute. Ebersole v. Adams, 10 Bush, 83; Downer v. Porter, 116 Ky. 423, 76 S. W. 135, 25 Ky. Law Rep. 571.

It does not declare that the transaction shall be void. It operates independently of motives of fraud by the parties. It is voidable only for a specific purpose, at the instance only of creditors of the debtor making the mortgage or conveyance, and then only if they take action to that end in a court of equity within six months from the execution or recordation of the instrument. The effect of such mortgage or conveyance, if so attacked, is made by the statute to operate as voluntary assignment of all the debtor's property for the benefit of all his creditors. It is precisely as if he had executed voluntarily a deed of trust in behalf of all his creditors, conveying the title to all his property (except exemptions) to a trustee upon the express trust that the latter would sell it and pay the proceeds pro rata to his creditors. Linthicum v. Fenley, 11 Bush, 131.

It is true the act of Congress of 1898 makes both a preference by an insolvent debtor of some one or more creditors to the exclusion of others, the execution of a voluntary deed of assignment, acts of bankruptcy, but, unless they are proceeded on as such

within four months from the time when filed for rec-
ord, they are not affected by the bankrupt statute.
Sections 3 and 60, Act Cong. 1898.   But the federal
statute does not prohibit or invalidate either a prefer-
ential mortgage by an insolvent debtor, or his volun-
tary deed of assignment.   If such mortgage is not at-
tacked within the time which will give the bankrupt
court jurisdiction of the matter, or if the assignor is
not proceeded against by his creditors, or does not
file his petition to be adjudged a bankrupt within the
four months allowed by the federal statute, those in-
struments may be enforced, and the parties to them
granted all appropriate relief by the state courts.   Or,
further, if the jurisdiction of the state court has been
invoked, and the latter has taken jurisdiction and
possession of the property, it may proceed to a final
adjudication of the rights of the parties, although the
United States District  Court may  also  have taken
jurisdiction of the bankrupt and his affairs.   Linthi-
cum v. Fenley, supra; Louisville Trust Co. v. Com-
ingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413.

It was held in Linthicum v. Fenley that the filing
of the petition in the state court gave that court pos-
session of the res, and entitled it to proceed with the
case.   However, there can scarcely be apprehended
any conflict of jurisdiction in this matter, for, while
the state court had jurisdiction of the subject-matter
and parties when the suit was begun down there, the
federal court did not have when the bankrupt filed
his petition in that court Janury 25, 1909, more than
four months after the mortgage had been recorded in
the proper office of registry.   While then the debtor
may have been adjudged a bankrupt, and the United
States  District  Court  had  jurisdiction  of  his
estate,  it  would  have  had  to  administer  it,

except as to conveyances and incumbrances executed or suffered within four months of the filing of the petition in that court, subject to existing liens and conveyances. Neither the act of Congress nor the statute of this state (the act of 1856) make a preferential conveyance by an insolvent debtor void, or deem it a fraud. Each statute gives to it, if the remedy is invoked within the prescribed times, the effect of a voluntary assignment by the debtor for the benefit of all his creditors. The state statute allows two months more of time in which the conveyance may be attacked.

While this transaction was such that the bankrupt court might have acquired jurisdiction of it, and have administered the estate embraced as if the mortgage did not exist, yet it did not within the time when it might, consequently the trust created by our statute survives unaffected by the provisions of the act of Congress. The state court can and should proceed to execute the trust, by requiring the property to be sold and the proceeds applied to the payment ratably of all the debts of Lanman then in existence. Property since acquired by him and before his application in bankruptcy will be subject alone to the bankrupt proceedings. And, in addition, the state court may adjudge a recovery by the plaintiff against the defendant Lanman in personam, staying the execution till his application for discharge in bankruptcy has been acted on by the United States District Court.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent herewith.