[Civil No. 1385.   Filed December 29, 1914.]

[146 Pac. 203.]

# THE TUBE CITY MINING AND MILLING COMPANY, Appellant, v. W. H. OTTERSON and HARRY HALL (the Duly Elected, Qualified and Acting Sheriff of the County of Pinal, State of Arizona), Appellees.

1. Judgment—Collateral Attack.—An action to obtain a judgment which will destroy the effect of a former judgment is a collateral attack, and relief can only be granted on proof that the former judgment was rendered without jurisdiction and is void.

2. Courts—Jurisdiction—Superior Courts.—The superior courts are courts of general jurisdiction, and have jurisdiction of foreclosures of mortgages and liens.

3. Judgment—Validity—Jurisdiction of Court.—A judgment of a court within its jurisdiction is not void, though wrong, and cannot be attacked collaterally, but the remedy is by appeal.

4. Courts—"Jurisdiction"—"Jurisdiction of Subject Matter."—The test of jurisdiction of the court is whether it has power to enter on the inquiry presented, and not whether its conclusion is right or wrong, and jurisdiction of the subject matter is the power to deal with the general abstract question, to hear particular facts in any case relating to the question, and to determine whether they are sufficient to invoke the exercise of the power.

5. Judgment—Jurisdiction of Court—Collateral Attack.—Where jurisdiction of the court over a particular case depends on the facts, its decision is conclusive against collateral attack.

6. Judgment—Jurisdiction of Court—Collateral Attack.—Where a complaint states a case within the general class over which jurisdiction of the court extends, it has jurisdiction to determine whether the pleading is good or bad.

7. Judges—Powers of Successor—Changing Determination.—The action of the court in a suit to foreclose a lien for oil sold and hauled to a mining company in overruling a special demurrer to the complaint and denying a motion to strike on the ground that the statutes did not give a lien for hauling materials for use in or on mining claims did not thereby finally determine the matter, and did not preclude the judge succeeding in office from changing the decision, and did not require plaintiff to abandon his lien, but the owner's remedy was by appeal.

XVI Ariz.—20

8. Judgment—Collateral Attack—Default Judgment.—A default judgment of a court having jurisdiction is conclusive against collateral attack.

9. Pleading—Complaint—Aider by Exhibit.—A defect in the complaint to foreclose a lien arising from the failure to describe the property subject to the lien asserted may be aided by reference to the claim for lien sufficiently describing the property made an exhibit and a part of the complaint.

10. Bankruptcy—Filing of Petition—Effect.—The rule that the filing of a petition in bankruptcy is a *caveat* and an attachment applies only to parties having no substantial claim of lien on or title to, the property of the bankrupt, but against persons having existing liens or titles the filing is neither a *caveat* nor an attachment.

11. Bankruptcy—Court's Jurisdiction.—The actual possession by the bankruptcy court of the property of a bankrupt is an indispensable condition of its exclusive jurisdiction.

12. Bankruptcy—Liens Created by Contract or State Statute—Protection.—The bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544, 545 [U. S. Comp. Stats. 1913, secs. 9585–9656]), protects liens created by contract or state statute, unless expressly annulled, and does not avoid a lien for labor preserved and enforced by legal proceedings, especially where the lien attached more than eight months before proceedings in bankruptcy and the action to foreclose the lien was also commenced long prior thereto.

13. Bankruptcy—"Lien"—"Lien Obtained Through Legal Proceedings."—A lien for materials and labor created by state statute is not "a lien obtained through legal proceedings" within the bankruptcy act, though it is necessary to file a claim and prosecute a suit to enforce it, a "lien" being a right of property and not mere matter of procedure.

14. Bankruptcy—Proceedings in State Court—Effect of Petition in Bankruptcy.—A suit in a state court to foreclose a lien against specific property brings the property into the control of the court, and withdraws it from the jurisdiction of every other court, and, where the suit is begun before filing a petition in bankruptcy against the debtor, the state court may proceed to a decree of foreclosure and sale and pay the debt secured without interference from the court of bankruptcy.

15. Judgment—Rendition in Absence of Defendant—Validity—Collateral Attack.—A judgment foreclosing a statutory lien, rendered in the absence of the owner of the property, adjudicated a bankrupt pending the suit, is not void, where the complaint on which it was rendered was relevant, and the suit was tried on the merits, and the judgment is not subject to collateral attack.

16. Evidence—Judicial Notice—Judicial Proceedings in Federal
     Courts.—The superior court of the state cannot take judicial notice
     of bankruptcy proceedings in the bankruptcy court.

APPEAL from a judgment of the Superior Court of the County of Maricopa.  J. C. Phillips, Judge.  Affirmed.

The facts are as stated in the opinion.

Mr. Frank H. Hereford and Frank E. Curley, for Appellant.

Messrs. Silverthorn & Sexton, for Appellees.

FRANKLIN, C. J.—The appellee W. H. Otterson had a contract with the appellant, the Tube City Mining and Milling Company, for the hauling of fuel oil from Casa Grande to certain mining property of the appellant situate in Pinal county.  Having hauled and delivered the oil pursuant to the contract, and the company refusing to pay a balance remaining due on account of the services rendered, the said Otterson did, on the 23d day of May, 1911, file a claim for lien with the county recorder of Pinal county upon the mining property for which said oil was designed for use for his labor in hauling and delivering the same; a copy of the claim for lien being served upon the Tube City Mining and Milling Company. Thereafter, in the month of July, 1911, the said Otterson commenced an action in Pinal county for the foreclosure of his claim for lien.  The Tube City Mining and Milling Company appeared in the action and asserted its defense thereto by a motion to strike, a special demurrer, and denials.  The motion to strike, the special demurrer, and denials vigorously contested the validity of Otterson's claim for lien for the hauling of the fuel oil.  Each method of attack interposed the defense that the statutes of Arizona do not give a lien to the laborer or other person who hauls materials designed for use in or upon any mine or mining claim.

By stipulation of the parties the action was transferred to Maricopa county for trial and further proceedings.  The motion to strike and demurrer coming on for hearing before Hon. Edward Kent, judge of the district court, the demurrer was overruled, and the motion to strike was denied.

In overruling the demurrer and denying the motion to strike, however, Judge Kent expressed the opinion that Otterson's claim for lien was controlled by the case of the *Santa Fe, Prescott & Phoenix Ry. Co.* v. *Arizona Smelting Co.,* 13 Ariz. 95, 108 Pac. 256. In the opinion Judge KENT stated:

''Under this decision it seems plain that the plaintiff is not entitled to a lien under the statute for the hauling of the oil. The demurrer, however, to the complaint may not be sustained, for the reason that the complaint asks judgment against the defendant for the value of the services rendered in hauling the oil,, irrespective of the lien. Nor can the motion to strike be granted, for the reason that the items of the lien, as sworn to and filed according to the statute, includes items for furnishing supplies not connected with the hauling thereof.''

In this condition of the record statehood intervened, and there was a change in the personnel of the court; Hon. John C. Phillips, judge of the superior court, succeeding Judge Kent. The cause, being at issue on the complaint and answer, was set for a trial on the merits, and the attorneys for defendant duly notified thereof. At the trial which took place on March 20, 1912, the Tube City Mining and Milling Company did not appear, for the reason that a bankruptcy proceeding had intervened, which will presently be mentioned. At the trial the court held Otterson's claim for lien to be a valid existing lien, and rendered its judgment foreclosing the lien, and also directing a sale of the property upon which the lien existed as under execution in satisfaction of the judgment. Pursuant to the judgment the property was sold by the sheriff of Pinal county, and on the 24th day of May, 1913, the sheriff made and delivered to the plaintiff Otterson, who was the purchaser, a certificate of sale of the property subject to redemption under the laws of Arizona. From the judgment foreclosing Otterson's claim for lien no appeal was taken nor writ of error prosecuted by the Tube City Mining and Milling Company, and the time therefor having long since expired, the present action was commenced on December 13, 1913, to have the judgment in the foreclosure action annulled, and also to enjoin the sheriff from delivering a deed to the purchaser of the property.

It appears from the complaint in the present action that on the 23d day of October, 1911, a petition in bankruptcy was filed against the Tube City Mining and Milling Company. Subsequently, on December 7, 1911, an amended petition was filed, and on the hearing of this amended petition the court in bankruptcy adjudged the mining company an involuntary bankrupt under the acts of Congress relating to bankruptcy. The order of adjudication was made on the 6th day of February, 1912. While the foreclosure suit was pending in the superior court, it does not appear that the adjudication of the defendant's bankruptcy was in any way brought to the attention of that court, and no attention was paid to it. No application for a stay of proceedings was made on that account. The trustee in bankruptcy, if one was appointed, did not seek to intervene or appear in the action in any way. The pleadings and proceedings in the foreclosure suit are set out in the complaint in this action, as also the proceedings in the bankruptcy court. It is alleged that the superior court never acquired jurisdiction of the property upon which the Otterson lien was claimed to exist, because no valid lien was claimed by Otterson, and no lien existed against the property to be foreclosed; that the complaint, therefore, failed to state facts sufficient to constitute a cause of action, hence the judgment of foreclosure is void and of no effect; that during the pendency of the bankruptcy proceedings the Tube City Mining and Milling Company had no right to appear in the action by Otterson to foreclose the lien, nor in any matter affecting the title to any of its property, because of such bankruptcy proceedings intervening; that when the proceedings in bankruptcy were instituted against the Tube City Mining and Milling Company the jurisdiction of the state court to proceed with the suit already pending therein for the enforcement of the lien against its property was taken away, and, upon the adjudication as a bankrupt, the custody of the *res* passed to the bankruptcy court; and that the bankrupt's discharge fully discharged the debt due said Otterson, and any judgment of the state court rendered therefor. This statement of the case thus epitomized is sufficient to obtain an understanding of the position assumed by appellant in seeking to have the foreclosure judgment annulled. A general demurrer to the complaint was sustained, and, the appellant electing

to stand on its complaint, judgment followed dismissing the action. The appeal is from the judgment.

We may conveniently catalogue the contentions pressed by appellant under two headings: (1) Did the superior court acquire jurisdiction to hear and determine the foreclosure suit and give the judgment rendered? (2) Did the intervening bankruptcy proceedings take away the jurisdiction of the superior court to proceed with the pending suit for the enforcement of the lien?

The argument of the appellant goes to the proposition that the state court had never obtained jurisdiction of the *res,* because the asserted lien was invalid, and the complaint seeking to enforce did not state facts sufficient to constitute a cause of action; further, that, by reason of the adjudication in bankruptcy, jurisdiction of the *res* became vested in the bankruptcy court; that, by reason thereof, the Tube City Mining and Milling Company had no right or authority to subsequently appear in the action in the state court, and the judgment rendered by the state court in its absence was void.

The present action is a collateral attack on the judgment of the superior court foreclosing the lien; collateral at least, in the sense that the judgment is attacked in a separate action, and not on appeal. It is not an attempt to avoid or correct the former judgment in some manner prescribed by the law, but it is an effort to obtain another and independent judgment which will destroy the effect of the former judgment. As the present action is a collateral attack on the former judgment, it must be made to appear that such judgment was rendered without jurisdiction and is void. It is clear that the merits of the foreclosure suit are not now here for consideration. We are not here perplexed with the question whether the judgment of the superior court was correct or incorrect, but the scope of the inquiry is circumscribed to determine if the superior court had jurisdiction to pass upon and determine the validity of the lien. If it had jurisdiction, the judgment cannot be attacked collaterally. If the court has jurisdiction of the cause, it has jurisdiction to pass judgment on the question of the sufficiency of the complaint to state a cause of action, and, even if its judgment on these questions be wrong, it is only error. Neither its judgment on

either question nor its judgment on the merits of the cause is open to collateral attack.

Superior courts are courts of general jurisdiction. They have jurisdiction in cases involving the foreclosure of all mortgages and liens. Such jurisdiction may not be the subject of any controversy. Judgments of courts within the scope of their power to hear and determine are not void, whether right or wrong. If it was within its power to determine the sufficiency of the Otterson claim for lien, as tested by the statutes of Arizona, its action in determining its sufficiency involved only a construction of the statutes relating to liens of laborers—a rightful exercise by the court of its jurisdiction. If the decision on the question was wrong, its judgment could have been reversed on appeal; it cannot be successfully impeached collaterally.

The test of jurisdiction is whether or not the tribunal has power to enter upon the inquiry; not whether its conclusion in the course of it is right or wrong. *Foltz* v. *Railway Co.,* 60 Fed. 316, 8 C. C. A. 635; *Board of Commissioners* v. *Platt,* 79 Fed. 567, 25 C. C. A. 87.

In the Foltz case the conclusion of the court was expressed in these words:

" 'Jurisdiction of the subject matter' is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question. Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong, and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal or impeached for fraud. *Insley* v. *United States* [150 U. S. 512], 14 Sup. Ct. 158 [37 L. Ed. 1163]; *Cornett* v. *Williams,* 20 Wall. 226 [22 L. Ed. 254]; *Des Moines Nav. & R. Co.* v. *Iowa Homestead Co.,* 123 U. S. 552 [8 Sup. Ct. 217, 31 L. Ed. 202]; *In re Sawyer,* 124 U. S. 200, 221, 8 Sup. Ct.

482 [31 L. Ed. 402]; *Skillern* v. *May's Exrs.*, 6 Cranch, 267
[3 L. Ed. 220]; *McCormick* v. *Sullivant,* 10 Wheat. 192 [6
L. Ed. 300]; *Hunt* v. *Hunt,* 72 N. Y. 217 [28 Am. Rep. 129];
*Colton* v. *Beardsley,* 38 Barb. 30, 52; *Otis* v. *Rio Grande,*
1 Woods, 279, Fed. Cas. No. 10,613; *Hamilton* v. *Railroad*
Co., 1 Md. Ch. 107; *Evans* v. *Haefner,* 29 Mo. 141, 147; *State*
v. *Weatherby,* 45 Mo. 17; *Rosenheim* v. *Harstock,* 90 Mo. 357,
365, 2 S. W. 473; *State* v. *Railway Co.,* 100 Mo. 59, 13 S. W.
398; *Hope* v. *Blair,* 105 Mo. 85, 93, 16 S. W. 595 [24 Am. St.
Rep. 366]; *Musick* v. *Railway Co.,* 114 Mo. 309, 315, 21 S. W.
491. Wherever the right and the duty of the court to exer-
cise its jurisdiction, depends upon the decision of the question,
it is invested with power to hear and determine, there its
judgment, right or wrong, is impregnable to collateral attack,
unless impeached for fraud.''

In *Board of Commissioners* v. *Platt, supra,* the court, in
speaking of the decision of a court on a matter within the
scope of its power to hear and determine, said:

"If its decision was erroneous, its judgment could be re-
versed on appeal; but its determination of the question, which
the plaintiff in error is seeking to retry in this case, was the
exercise by that court—and the rightful exercise—of its juris-
diction; and, whether its decision was right or wrong, it can-
not be successfully attacked in this collateral proceeding.''

"Where there is general jurisdiction of a subject, and the
jurisdiction of a particular case depends on the facts, the
decision of the tribunal is conclusive as against a collateral
attack. *Tucker* v. *Sellers,* 130 Ind. 514, 30 N. E. 531; *Spen-
cer* v. *Spencer,* 31 Ind. App. 321, 99 Am. St. Rep. 260, 67
N. E. 1018.

In *Manley* v. *Park,* 62 Kan. 553, 64 Pac. 28, it is said:

" 'Jurisdiction over the subject matter' is the right of the
court to exercise judicial power over that class of cases; not
the particular case before it, but rather the abstract power
to try a case of the kind or character of the one pending; and
not whether the particular case is one that presents a cause
of action, or, under the particular facts, is triable before the
court in which it is pending, because of some inherent facts
which exist and may be developed during the trial. . . . By
'jurisdiction over the subject matter' is meant the nature
of the cause of action and, of the relief sought; and this is

conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred. . . . The power to determine and decide a case includes the power to decide it wrong as well as to decide it right.''

When the validity of a mortgage has been adjudicated in a foreclosure suit, its validity is finally settled by the decree, and the decree settling it is not open to collateral attack. *Carpenter* v. *Zarbuck,* 74 Ark. 474, 86 S. W. 299; *Wood* v. *Jordan,* 125 Cal. 261, 57 Pac. 997; *Brenholts* v. *Miller,* 80 Kan. 185, 101 Pac. 998; *Hansen* v. *Wagner,* 133 Cal. 69, 65 Pac. 142; *George Long Co.* v. *Albert,* 116 Md. 111, 81 Atl. 265, reported in Ann. Cas. 1913B, 1259, with note on collateral attack on judgment or decree in mechanic's lien proceeding.

Whether a complaint does or does not state a cause of action, so far as it affects the question of jurisdiction, is tersely stated in the case of *Winningham* v. *Trueblood,* 149 Mo. 572, 51 S. W. 399, in a quotation from 1 Elliott, Gen. Prac., section 320, as follows:

''Whether a complaint does or does not state a cause of action, is, so far as concerns the question of jurisdiction, of no importance; for, if the complaint states a case belonging to a general class over which the authority of the court extends, there is jurisdiction, and the court has power to decide whether the pleading is good or bad.''

Speaking of the question of jurisdiction, Mr. Justice JOHNSON, of the court of appeals of New York, says:

''Jurisdiction does not relate to the right of the parties, as between each other, but to the power of the court. The question of its existence is an abstract inquiry, not involving the existence of an equity (right) to be enforced, nor the right of the plaintiff to avail himself of it if it exists. It precedes these questions, and a decision upholding the jurisdiction of the court is entirely consistent with a denial of any equity (right), either in the plaintiff or in anyone else. . . . Have the plaintiffs shown a right to the relief which they seek, and has the court authority to determine whether or not they have shown such a right? A wrong determination of the question first stated is error, but can be re-examined only on appeal. The other question is the question of jurisdiction.''

*People* v. *Sturtevant,* 9 N. Y. (5 Seld.) 263, 269, 59 Am.
Dec. 536.

The principle just stated finds abundant authority in the
adjudicated cases. The following may be consulted: *In re
Hughes,* 159 Cal. 360, 113 Pac. 684; *Bresee* v. *Seberger,*
88 Neb. 632, 130 N. W. 264; *O'Connor* v. *Board of Trustees,*
247 Ill. 54, 93 N. E. 124; *Baldwin* v. *Foster,* 157 Cal. 643, 108
Pac. 714; *Burke* v. *Interstate Assn.,* 25 Mont. 315, 87 Am. St.
Rep. 416, 64 Pac. 879; *Board of Commissioners* v. *Equitable
Inv. Co.,* 80 Kan. 492, 103 Pac. 996. See, also, Van Fleet's
Collateral Attack, sec. 61.

Coming now to the opinion of the trial judge in overruling
the special demurrer and denying the motion to strike: It
does not have the effect sought to be given it by appellant.
The special demurrer and the motion to strike both attacked
the validity of the claim for lien for hauling the fuel oil.
The demurrer could have been sustained and the motion to
strike granted, and still those phases of the complaint seek-
ing a recovery of the value of the services rendered and the
enforcement of the lien for supplies furnished not connected
with the hauling thereof remain intact. It is evident that
the court was of opinion at the time that at least a part of
the items claimed as lienable were so. The ruling was in no
sense a final determination of the matter, and did not pre-
clude either the judge who gave the ruling or his successor
in office from subsequently changing it. *Crim* v. *Kessing,*
89 Cal. 478, 23 Am. St. Rep. 491, 26 Pac. 1074. But, irre-
spective of this, the difficulty here is that the trial judge did
overrule the demurrer and did deny the motion to strike the
objectionable items. Under this state of the record, as ap-
pellee well suggests, we do not think it devolved upon Otter-
son to abandon his lien, part of which was held to be good,
and all of which he maintained to be good. The appellant
could well have insisted upon the point at subsequent stages
of the proceedings, and, as remarked in one of the cases
cited:

"The defendant, having been summoned into court, was
compelled to take cognizance of all subsequent proceedings,
and if it was aggrieved by the action of the court, its remedy
was by appeal; and it could not lie dormant until all remedy
by appeal had become unavailable, and then go into court and

ask that the judgment be set aside as void." *Board of Commissioners* v. *Equitable Inv. Co., supra.*

Even in cases where a court has jurisdiction to enter judgment by default, a judgment on default is as conclusive against collateral attack as any other form of judgment. *Warthen* v. *Himstreet,* 112 Iowa, 605, 84 N. W. 702; *Orr* v. *Mercer County Mut. F. Ins. Co.,* 114 Pa. 387, 6 Atl. 696; *Last Chance Mining Co.* v. *Tyler Min. Co.,* 157 U. S. 683, 39 L. Ed. 859, 15 Sup. Ct. Rep. 733; *Southern Pacific R. Co.* v. *United States,* 168 U. S. 1, 51, 42 L. Ed. 355, 18 Sup. Ct. Rep. 18; 1 Freeman on Judgments, sec. 330; 2 Freeman on Judgments, sec. 532; 5 Bigelow on Estoppel, p. 77.

It is also claimed that the complaint in the foreclosure suit did not sufficiently describe the property. While it was not as certain, perhaps, as it should have been, it is admitted that a sufficient description of the property is set out in the claim for lien attached to the complaint and made a part thereof. The description of property is not such a substantive allegation as may not be aided by reference to an exhibit made a part of the complaint, within the rule announced in *McPherson* v. *Hattich,* 10 Ariz. 104, 85 Pac. 731, and *State ex rel. Young* v. *Superior Court,* 14 Ariz. 126, 125 Pac. 707.

We are now met with the contentions arising on the record due to bankruptcy proceedings.

It is insisted here that the filing of the petition in bankruptcy "is a *caveat* to all the world and, in effect, an attachment and injunction"; that, upon appellant's adjudication in bankruptcy, the bankruptcy court took exclusive jurisdiction of the mines and real estate, and therefore the state court had no power further to proceed. The quotation just made is taken from the case of *Mueller* v. *Nugent,* 184 U. S. 1, 46 L. Ed. 405, 22 Sup. Ct. Rep. 269. This statement, however, as well as that in other cases which have repeated it, has been limited in its application by the later decisions of the supreme court of the United States, in which it is adjudged that the statement applies only to parties who have no substantial claim of lien upon, or title to, the property of the bankrupt, and that, against those who have such claims of existing liens or titles when the petition in bankruptcy is filed, that filing is neither a *caveat* nor an attachment; that it creates no lien. *Jacquith* v. *Rowley,* 188 U. S. 620, 47 L. Ed.

620, 23 Sup. Ct. Rep. 369; *York Mfg. Co.* v. *Cassell,* 201 U. S. 344, 50 L. Ed. 782, 26 Sup. Ct. Rep. 481; *Hiscock* v. *Varick Bank,* 206 U. S. 28, 51 L. Ed. 945, 27 Sup. Ct. Rep. 28.

The actual possession of the bankruptcy court is the indispensable condition of its exclusive jurisdiction. *First National Bank* v. *Title Trust Co.,* 198 U. S. 280, 49 L. Ed. 1051, 25 Sup. Ct. Rep. 693; *Louisville Trust Co.* v. *Comingor,* 184 U. S. 18, 46 L. Ed. 413, 22 Sup. Ct. Rep. 293; *Murphy* v. *John Hofman Co.,* 211 U. S. 562, 53 L. Ed. 327, 29 Sup. Ct. Rep. 154. In the last case cited the court said:

"The jurisdiction in such cases arises out of the possession of the property and is exclusive . . . of all other courts, although otherwise the controversy would be cognizable by them."

In the case of *In re Rathman,* 183 Fed. 913, 106 C. C. A. 253, it is observed:

"Here is the touchstone of the exclusive and of the summary jurisdiction of the bankruptcy court to determine the merits of adverse claims to liens upon and titles to property claimed to belong to the bankrupt. It is the taking possession of the property as the property of the bankrupt, by the act of some officer of the bankrupt court, such as a referee, a receiver, or a trustee."

See, also, *National Foundry etc.* v. *Oconto City etc.,* 105 Wis. 48, 81 N. W. 125.

It is the intention of the Bankruptcy Act to protect all liens, whether arising by contract or by statute, except only such as are expressly declared annulled or invalidated. Nowhere in the act is a lien of the character under consideration denounced by the act. It is not intended to avoid a lien secured by the act of labor and preserved and enforced by legal proceedings. From the dates mentioned it is seen that the Otterson lien attached more than eight months before proceedings in bankruptcy were commenced, and the action to foreclose the lien was commenced long prior thereto. See *In re Emslie,* 102 Fed. 291, 42 C. C. A. 350; *Hobbs* v. *Head & Dowst Co.,* 184 Fed. 409, 106 C. C. A. 519; *In re Rohrer,* 177 Fed. 381, 100 C. C. A. 613; *Metcalf* v. *Barker,* 187 U. S. 165, 47 L. Ed. 122, 23 Sup. Ct. Rep. 67; *In re Kerby-Dennis Co.,* 95 Fed. 117, 36 C. C. A. 677; *Pickens* v. *Roy,* 187 U. S. 177, 47 L. Ed. 128, 23 Sup. Ct. Rep. 78; *In re*

*Koslowski* (D. C.), 153 Fed. 823; *Kritzer* v. *Tracy Engineering Co.,* 16 Cal. App. 287, 116 Pac. 700; *Jensen* v. *Dorr,* 23 Cal. App. 701, 139 Pac. 659; *Louisville Dry Goods Co.* v. *Lanman,* 135 Ky. 163, 135 Am. St. Rep. 451, 121 S. W. 1042, 28 L. R. A. (N. S.) 363; *Bradley* v. *United States Tel. Co.,* 79 N. J. Eq. 458, 81 Atl. 1107; *Heckscher* v. *Blanton,* 111 Va. 648, 37 L. R. A. (N. S.) 923, 69 S. E. 1045; *McDougald* v. *Chattanooga Medicine Co.,* 10 Ga. App. 653, 73 S. E. 1089.

Liens are rights of property, and not mere matters of procedure. *The Lottawanna,* 21 Wall. 558, 22 L. Ed. 654. The lien here contested was not a ''lien obtained through legal proceedings'' within the meaning of the Bankruptcy Act, even though it was necessary to file a claim and initiate the prosecution of a suit to preserve and enforce it. The cases cited so hold.

The mere bringing of an action does not ordinarily bring the assets of the debtor into the custody of a state court. But the commencement of suit to foreclose a mortgage or to enforce liens against specific property thereby brings the property to be affected into the control of the court and withdraws it from the jurisdiction of every other court. Loveland on Bankruptcy, sec. 41. And where a suit to foreclose a mortgage is begun in a state court before a petition in bankruptcy is filed against the mortgagor, the state court may proceed to a decree of foreclosure and sale, and pay the debt secured by the mortgage from the proceeds of such sale, without interference from the court or bankruptcy. *Id.,* sec. 57, 58; Black on Bankruptcy, sec. 390; *McLoughlin* v. *Knop* (D. C.), 214 Fed. 260.

''Where particular property of a bankrupt is covered by a lien not fraudulent or preferential, but valid and enforceable notwithstanding his bankruptcy, a state court has concurrent jurisdiction with the bankruptcy court to foreclose the lien and satisfy the debt. The trustee may indeed elect and claim the right to sell the property for the sake of saving for general creditors whatever may remain out of its proceeds after satisfying the lien claimant. But if he does not take this course, he is considered as abandoning the property to the lienor, and there is then nothing to prevent a state court from entertaining a foreclosure suit or other proper proceeding.'' Black on Bankruptcy, sec. 26.

"The federal bankruptcy law does not operate to take jurisdiction from courts otherwise authorized to determine the existence of liens on the property of the bankrupt." *Murphey et al.* v. *Brown et al.*, 12 Ariz. 268, 100 Pac. 801.

In the case of *Eyster* v. *Gaff*, 91 U. S. 521, 23 L. Ed. 403, Mr. Justice MILLER expressed the opinion of the supreme court of the United States in this emphatic language: ·

"It is a mistake to suppose that the bankrupt law avoids of its own force all judicial proceedings in the state or other courts the instant one of the parties is adjudged a bankrupt. There is nothing in the act which sanctions such a proposition. The court in the case before us had acquired jurisdiction of the parties and of the subject matter of the suit. It was competent to administer full justice, and was proceeding, according to the law which governed such a suit, to do so. It could not take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of parties to the suit already pending. It was the duty of that court to proceed to a decree as between the parties before it until, by some proper pleadings in the case, it was informed of the changed relations of any of those parties to the subject matter of the suit. Having such jurisdiction, and performing its duty as the case stood in that court, we are at a loss to see how its decree can be treated as void. It is almost certain that, if at any stage of the proceeding, before sale or final confirmation, the assignee had intervened, he would have been heard to assert any right he had, or set up any defense to the suit. The mere filing in the court of a certificate of his appointment as assignee, with no plea or motion to be made a party or to take part in the case, deserved no attention, and received none. In the absence of any appearance by the assignee, the validity of the decree can only be impeached on the principle that the adjudication of bankruptcy divested the other court of all jurisdiction whatever in the foreclosure suit. The opinion seems to have been quite prevalent in many quarters at one time that the moment a man is declared bankrupt the district court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the circuit courts have

concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person who contested with the assignee any matter growing out of the disputed rights of property or of contracts into the bankrupt court by the service of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against this view. The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions. If it has for certain classes of actions conferred a jurisdiction for the benefit of the assignee in the circuit and district courts of the United States, it is concurrent with, and does not divest, that of the state courts.''

See, also, *Claflin* v. *Houseman,* 93 U. S. 130, 23 L. Ed. 833, and *Davis* v. *Friedlander,* 104 U. S. 570, 26 L. Ed. 818.

Appellant contends that the judgment rendered in the foreclosure suit in the absence of the Tube City Mining and Milling Company should be treated as a nullity. To sustain this contention appellant cites *Reynolds* v. *Stockton,* 140 U. S. 254, 35 L. Ed. 464, 11 Sup. Ct. Rep. 773. We fail to perceive that the principle laid down in the Reynolds case has any bearing whatever upon, or any relation to, the facts of this case. In the case cited the chancery court of New Jersey had held that a decree or judgment which is not appropriate to any part of the matter in controversy before the court can have no force; that the matter in controversy is that exclusively which is presented by the pleadings and the issue framed thereby; and that a decree of a New York court which is entirely aside of the issue raised in the record is invalid, and will not be treated as *res adjudicata.* This judgment the court of errors and appeals of that state affirmed. In the supreme court of the United States it was there contended that the New Jersey court had refused to give effect to section 1 of article 4 of the Constitution of the United States, providing that:

''Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state.''

Referring to this constitutional provision, the supreme court said:

"It does not demand that a judgment rendered in a court of one state, without the jurisdiction of the person, shall be recognized by the courts of another state as valid, or that a judgment rendered by a court which has jurisdiction of the person, but which is in no way responsive to the issues tendered by the pleadings, and is rendered in actual absence of the defendant, must be recognized as valid in the courts of any other state."

In the New York suit the defendant appeared and filed his answer, and took no further part in the proceedings and was not present at the trial. This feature of the case is disposed of as follows:

"Nor are we concerned with the question as to the rule which obtains in a case in which, while the matter determined was not, in fact, put in issue by the pleadings, it is apparent from the record that the defeated party was present at the trial, and actually litigated that matter. In such a case the proposition, so often affirmed, that that is to be considered as done which ought to have been done may have weight, and the amendment which ought to have been made to conform the pleadings to the evidence may be treated as having been made. Here there was no appearance after the filing of the answer, and no participation in the trial or other proceedings. Whatever may be the rule where substantial amendments to the complaint are permitted and made, and the defendant responds thereto, or where it appears that he takes actual part in the litigation of the matters determined, the rule is universal that, where he appears and responds only to the complaint as filed, and no amendment is made thereto, the judgment is conclusive only so far as it determines matters which by the pleadings are put in issue."

Of course, the complaint must be relevant, but the judgment we are asked to treat as a nullity determined no matter not put in issue by the pleadings, but was entirely responsive to the matters put in issue and contested. Within the limitations of the Reynolds case it is plain that the superior court could not, in an action for the recovery of personal property, give a valid judgment by default for the recovery of real estate; nor could it, in an action on a promissory note give

such a judgment for the recovery of real estate. Likewise, if a magistrate having authority to fine for breach of the peace should adjudge the offender guilty of treason and punish him as prescribed for treason, such a judgment would be a nullity, as much so as if the magistrate had found the offender guilty of a breach of the peace without the preliminary jurisdiction to hear and determine that class of cases. Nor must we be understood as holding that a claim for labor in hauling supplies designed for use or used in or upon a mine or mining claim is not lienable under the statutes of Arizona. It has never been determined by the highest court in this jurisdiction and may be a debatable question when properly presented.

The foreclosure suit was tried upon its merits and decided in favor of the lien by the superior court, and, even if its judgment was incorrect, it was but error, which could have been revised on appeal, but cannot be corrected in this proceeding.

The superior court could not take judicial notice of the bankruptcy proceedings, and if the bankrupt chose to absent itself from the trial or its trustee chose not to intervene, such was no fault of the plaintiff, but must be attributed to the bankrupt, or to the conduct of those representing the interests of its estate. As said by Mr. Justice BENSON in the case of *Brenholts* v. *Miller*, 80 Kan. 185, 101 Pac., at page 998:

"If the defendant's contention that this judgment should be set aside on motion is correct, then, in any case where a petition would be held insufficient to state a cause of action, if demurred to, it would be better not to incur the expense of presenting a demurrer and taking an appeal from an adverse ruling, since the judgment might at any time be set aside on motion. A party who is summoned in the course of regular judicial proceeding either personally or by publication, in a court having jurisdiction, will have his day in court, and must appear and take the proper steps to protect his interests, within the time allowed for that purpose. Opportunity may not knock again at his door."

The superior court had jurisdiction of the subject matter of the foreclosure suit, and the parties were properly before the court. The judgment of the court was within the issues presented by the pleadings and relevant to the matters con-

tested. This being true, its judgment in that action, however erroneous it may be, is not void. Some other matters have been suggested, but we have deemed it unnecessary to extend this opinion in discussing them. Upon the whole case presented, however, we are of opinion that there is no error in the judgment sustaining the demurrer and dismissing the action, and therefore it must be affirmed.

Judgment affirmed.

ROSS, J., concurs.

CUNNINGHAM, J., Dissenting.—This is an equitable action seeking relief from a judgment and its enforcement. A number of grounds for relief are assigned justifying the relief prayed. Some of these grounds go to the entire judgment as rendered, such as the allegations of discharge in bankruptcy and want of or loss of jurisdiction. Other alleged grounds for relief go only to that part of the judgment fixing and foreclosing a mechanic's lien on mines for services and freight charges in transporting fuel oil from a point distant to the mines. The grounds for relief from the part of the judgment fixing and foreclosing a lien are allegations of facts tending to show surprise, accident and mistake. Plaintiff alleges, in substance, that at a hearing of the former action the court announced, in ruling upon motions and a demurrer, that the facts stated in the complaint seeking to fix and foreclose a lien on the mines for hauling fuel oil to the mines state no grounds for fixing a lien for that service, as the law gives no right of lien for such services. This plaintiff, as the defendant in the action, was contending that such is the law, and the announcement of that rule of law by the court was satisfactory to plaintiff. The final trial of the cause on its merits was fixed for a later date. Plaintiff, the then defendant, being satisfied with the expressed view of the court on the only contested question in the case, did not appear at the trial on the merits. The judgment rendered fixed and foreclosed a lien on the mines for the charge of hauling fuel oil and for all other claims made by the lien claimant. Upon this feature of the case the plaintiff here alleges that it was surprised by the changed view the court took of the law applicable to the facts; that resting upon the former ruling as

the law of the case, this plaintiff had no actual knowledge of the contents of the judgment as rendered until the time for appeal had expired and shortly before the commencement of this action. The power of the court over its judgments continues for the purpose of carrying the decree into execution; therefore provisions inserted for the purpose of carrying the decree into effect may be amended or inserted at any time. 16 Cyc. 506, and note 84. In my opinion, the complaint states facts sufficient to invoke the equitable jurisdiction to restrain the carrying into effect of those provisions of the judgment fixing and foreclosing a lien in satisfaction of a judgment debt. In this respect the plaintiff alleges surprise arising from the authoritative announcement of the court, that a meritorious defense exists, and excuses negligence—the existence of all the central facts necessary to authorize relief from the provisions of the judgment inserted for the purpose of its enforcement in a particular manner. This measure of relief may be granted the plaintiff, and, in my opinion, a court of equity should grant such relief upon the facts alleged in the complaint.

The general demurrer should have been overruled.